THE FARMERS' AND CITIZENS' NATIONAL BANK, Respondent, v. ALFRED NOXON AND ROSCIUS R. KENNEDY, impleaded with DANIEL K. COLBORN, Appellants.

Proof of a diversion of commercial paper from the purpose for which it was delivered by the maker, casts upon the holder the burden of showing that he is, or has succeeded to the rights of, a *bona fide* holder.

A note made by N. for $5,000, indorsed by K., was delivered to C. to be discounted for the benefit of N. C. kept an account with the plaintiff's bank, in the name of " C, agent," and was known to the plaintiff to be in embarrassed circumstances; but was also known to be doing business as a broker, under the same name, and had been in the habit of procuring the plaintiff to discount notes, as large in amount as N.'s note, made and indorsed by others, and which were paid. He delivered N.'s note to the plaintiff, with other collaterals, as security for what he then owed, or might thereafter owe, and was permitted to overdraw his account some $8,000. Afterwards the plaintiff discounted for C. his own note for $18,000, taking N.'s note, with others, as security, and credited the proceeds on C.'s account. C. then drew out over $9,000, which left a balance to his credit, after satisfying his over draft.

*Held*, in an action by the plaintiff upon N.'s note, that the circumstances under which it was received did not show that it was not taken in good faith; that the plaintiff became a bona fide holder of it as security for C.'s overdraft, and was a *bona fide* holder of the note, as security for the payment of C.'s own note.

(Submitted June 12th; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme Court in the second district, affirming (as modified) a judgment in favor of the plaintiff, entered upon the report of Nathan B. Morse, Esq., referee.

This action is upon a promissory note for $5,000, dated October 22d, 1866, payable three months from date, made by the defendant Noxon, and indorsed by the defendants Kennedy and Colborn, the indorsement of the latter being "D. K. Colborn, Agent."

The following facts were found by the referee: Noxon and Colborn, for a number of years before the date of this note, had transactions together, mainly in borrowing money from banks and others, among them the plaintiff's bank. Colborn,

for a considerable time before the date of the note and until the commencement of this action, kept an account in the plaintiff's bank, and had, before that date, procured the plaintiff to discount paper belonging to, and placed in his hands for that purpose by, Noxon, some of which was indorsed by Kennedy for Noxon's accommodation. October 22d, Noxon made four notes, payable to Kennedy and indorsed by him, for the purpose of meeting other notes of Noxon to come due; and in which four notes the time of payment was left blank, so that the longest time that could be obtained from the banks, in negotiating them, might be filled in. These notes were then delivered to one Smith, for the purpose of having him or Colborn, or both, negotiate them and apply the proceeds to the object above expressed. Among them was the note in suit.

Colborn filled in a time of payment, and deposited with the plaintiff the note in suit, with other commercial paper, as collateral security for such money as he owed, or as might become due from him to the plaintiff, and was permitted to and did, on the credit of those securities, overdraw his bank account more than $8,000. On the 22d of November a loan of $18,000 was made by the plaintiff to Colborn, on his own note, secured by certain paper enumerated on the face thereof, among which was the note in suit. A sufficient amount of this loan was applied to the discharge of Colborn's previous overdrafts, and the remainder was received by him.

Within two or three weeks after the 22d of October, Noxon had notice that some of the four notes made by him had been discounted at the plaintiff's bank, and the proceeds had not been used for the purpose for which they were delivered by him, and was then promised by Colborn that such of them as had not then been discounted should be returned to him, Noxon; but he gave no notice to the plaintiff of any of the facts. The plaintiff never had notice of the purpose for which the note in suit had been made or indorsed.

It appeared from the evidence that Colborn was, during all this time, in embarrassed circumstances, to the knowledge of

the plaintiff; that he did business as a broker, and kept his account with the plaintiff in the name of "D. K. Colborn, Agent."

The referee found the amount due upon the $18,000 note (all the collaterals thereto except the note in suit having been paid and applied thereon), to be $4,946.42, for which sum the plaintiff had judgment.

The General Term corrected an error of the referee in stating the amount, reducing it $521.25, and affirmed the judgment as corrected.

*George C. Blanke,* for the appellant, cited Edwards on Bills, 319; *Wardell* v. *Howell* (9 Wend., 170); *Prentiss* v. *Graves* (33 Barb., 621); *Brown* v. *Taber* (5 Wend., 566); *Bank of Rochester* v. *Bowen* (7 Wend., 158); Ang. & Ames on Corp., §§ 305–306); *President, etc.,* v. *Corwin* (37 N. Y., 320); *Noonras* v. *Cordell* (43 Barb., 449); *Tyler* v. *Gardiner* (35 N. Y., 574); *Stalker* v. *McDonald* (6 Hill, 93); *McBride* v. *Tarbor's Bank* (26 N. Y., 450); *Cardwell* v. *Hicks* (37 Barb., 458).

*Amasa J. Parker,* for the respondent, cited Story on Prom. Notes, § 195; Chitty on Bills, 8th ed., p. 85; *Warren* v. *Lynch* (5 John., 239); *Bay* v. *Coddington* (5 John. Ch., 54); *Bank of Salina* v. *Babcock* (21 Wend., 499); *Bank of Sandusky* v. *Scoville* (24 id., 115); *Williams* v. *Smith* (2 Hill, 301); *Seneca County Bank* v. *Ness* (5 Den., 330); *Hunt* v. *Fish* (4 Barb., 324); *Montross* v. *Clark* (2 Sandf., 115); *White* v. *Springfield Bank* (3 id., 222); *Young* v. *Lee* (18 Barb., 192); affirmed, 2 Kern., 551; *Stettheimer* v. *Meyer* (33 Barb., 215); *Brown* v. *Burrell* (31 N. Y., 113); *Magee* v. *Badger* (34 N. Y., 248); *Pratt* v. *Cowan* (37 N. Y., 44); *Swift* v. *Tyson* (16 Peters, 15); *Mohawk Bank* v. *Coney* (1 Hill, 509); *Burns* v. *Rowland* (40 Barb., 374); *Smith* v. *Murdock* (1 Abb. N. S., 374); *Bromley* v. *Walker* (51 Barb., 207); *Davis* v. *McCready* (17 N. Y., 230); *Steinhart* v. *Boker* (34 Barb., 443); *Marine Bank* v. *Clements* (31 N. Y., 33); *Tilton* v. *Nelson* (27 Barb., 601); *Belmont* v. *Hage* (35 N. Y., 65).

GROVER, J.  The defendants proved that the note in suit had been diverted from the purpose for which it had been delivered to Smith by the maker as his agent.  This cast upon the plaintiff the onus of showing that it was a *bona fide* holder, or had succeeded to the rights of such a holder. (Edwards on Bills, 319; *Wendell* v. *Howell*, 9 Wend., 170.) The facts found by the referee show that the plaintiff was such holder.  The counsel for the appellant insists that the plaintiff's president received the note under circumstances of suspicion sufficient to put him upon inquiry, and that such inquiry would have led to a discovery of the diversion. There is no exception in the case raising this question, but if there was it would not be available to the defendant.  The only circumstances relied upon in support of the position are that Colborn, from whom the plaintiff received the note, kept his accounts with it as agent, and that the president of the plaintiff knew that he was embarrassed in his circumstances.  But it was also proved that he was doing business as a broker in New York, and was in the habit of procuring notes made and indorsed by others to be discounted by the plaintiff, of an amount as large as the one in question, which had been paid.  Under these facts there was nothing to excite suspicion as to his ownership of the note, much less to induce a belief that the plaintiff did not take it in good faith.  (See *Magee* v. *Badger*, 34 N. Y., 247.)  The exceptions to the findings of fact by the referee raise in this court the question only, whether there was any evidence in support of the finding.  In the Supreme Court the question upon such an exception is, whether the finding is against the weight of evidence, but the latter question cannot be considered here.  The finding by the referee that the note was delivered to the plaintiff by Colborn, with other collaterals, as security for what Colborn owed the plaintiff, or might become indebted to it, was sustained by the testimony of Colborn, and the account of the plaintiff with him shows that, after such delivery, Colborn was permitted to overdraw his account to an extent that, on the 22d of November, the account was overdrawn

upward of $8,000. The plaintiff was a *bona fide* holder of the note, as security for this amount. It is further found, that upon the 22d of November, 1866, the plaintiff discounted for Colborn his note for $18,000, and received from him this note, together with other notes, as security for the payment of the note, and credited the proceeds in Colborn's account; that he then drew upward of $9,000 from the plaintiff, leaving a balance to his credit after satisfying the amount due the plaintiff upon the overdraft. The plaintiff was a *bona fide* holder of the note, as security for the payment of the $18,000 note, and had the right as such to enforce payment, so far as necessary to satisfy such note. It is clear that this right is not affected by the application of a portion of the proceeds to the payment of the debt due the plaintiff from Colborn. The General Term corrected the error of the referee in stating the account of the amount received by the plaintiff from the collaterals other than the note in suit, so as to give the defendant the benefit of all such payments. None of the exceptions to the rulings of the referee as to the competency of evidence were well taken, except such as were obviated by the subsequent withdrawal by the plaintiff of the objections made, and giving the defendant an opportunity to introduce the testimony. The judgment appealed from must be affirmed.

All concur.

Judgment affirmed.