Harrison A. Cowing, Appellant, v. Abraham Altman, Respondent.

A check given to carry out an agreement made in contravention of the provision of the Bankrupt Act (section 45), prohibiting officers of courts in bankruptcy from taking anything other than the fees allowed by the act for acts done under it, is not absolutely void; notwithstanding the illegality of the consideration, it is valid in the hands of a *bona fide* holder for value, taking it, before it is dishonored, without notice of its illegality.

The burden of showing that the transferee had notice of the infirmity in the paper is upon the party seeking to impeach his title.

The date of a check is *prima facie* evidence of the time it was made and had its inception; and, if found in the hands of the payee or a third person for a considerable time (in this case fourteen months) after its date, will be deemed to be discredited, a party taking it is put upon inquiry, and, in the absence of explanation, takes subject to any defense existing as between the payee and drawer.

A check, however, has no inception until delivery, and for all legal pur poses is to be considered as made on the day it is delivered; where the date and the time of delivery are not the same, the latter may be shown in answer to any such defense: a party negotiating for it, who ascer tains that the check was in fact delivered on the day it is offered to him, is not bound to go further and inquire as to any other objection to

Statement of case.

it ; and if he takes it *bona fide,* for value, without notice of illegality or other defense, and it appears that it was in fact delivered on the day it was negotiated, he stands in no worse position than if he had first inquired and been informed of this fact.

Where, therefore, a check is delivered by the drawer to the payee long after its date, and is upon the same day transferred by the latter to a *bona fide* purchaser for value without notice of any defense, it is valid in his hands, notwithstanding a defect or illegality in the consideration, which would be a good defense as between the drawer and payee.

Accordingly, *held,* where, in pursuance of an arrangement between an assignee in bankruptcy and creditors, a check for additional compensation over and above his fees, dated on the day it was made, was deposited with a third person, to be delivered to the payee when he was discharged from his position as assignee, which check remained in the hands of the depositary for fourteen months, and was then delivered upon the order of the payee, on the day the latter was discharged as assignee, to a *bona fide* purchaser from him for value, that the check had inception only on delivery, and that in the absence of evidence of notice to the purchaser of any defense he, or his transferee, could, upon its being presented for payment and dishonored, enforce it against the drawer.

*Cowing* v. *Altman* (5 Hun, 556) reversed.

(Argued November 21, 1877 ; decided December 18, 1877.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of defendant entered upon an order overruling plaintiffs' exceptions, and directing judgment on a verdict. (Mem. of decision below, 5 Hun, 556.)

This action was upon a check, dated March 8, 1874, on the Third National Bank of Buffalo, drawn by defendant payable to the order of Edwin A. Holbrook, indorsed by him and protested for non-payment May 3, 1872. It was proved on the part of the defendant, that proceedings in bankruptcy were commenced against the firm of Biesenthal, Falck & Israel on the 23d day of December, 1869. That on the first day of February, 1870, said Holbrook was appointed assignee; that he qualified and entered upon the discharge of his duties, and continued to act as such assignee until the 2d day of May, 1872, when he was discharged by order of the court on final accounting. That the firm of Altman & Co., of which the defendant was a

member, were negotiating with the eastern creditors of Biesenthal, Falck & Israel to buy up the claims of these creditors. That the creditors made it a condition of settling these claims that, Altman & Co. should settle with the assignee, to whom they had agreed to pay two thousand dollars, if he would take the position of assignee, and that this should be without prejudice to his fees as assignee. That thereupon the defendant agreed with Holbrook, for the purpose of consummating this arrangment, that he would give him the check in suit, but that it should be deposited with Dennis Bowen for safe-keeping, and be delivered to Holbrook when he should have been discharged from his position of assignee, if he would telegraph that he had been settled with. Holbrook agreed to this, and thereupon did so telegraph in consideration of such settlement with Holbrook and of moneys to them paid, the eastern creditors did sell and assign their claims to Altman & Co. That the check in suit was given to Mr. Bowen the day it bears date, and that it remained in the hands of Mr. Bowen until the second day of May, 1872, when Holbrook, having been discharged as aforsaid, the check was delivered to Seth Clark, upon Holbrook's order. Clark, on the day that it was delivered to him, paid it to the Marine Bank of Buffalo to take up a note of $2,000 held by the Marine Bank against Clark & Hazard. That he delivered the check to the bank, and that the bank gave him up the note for the check; that subsequently to the protest of the check it was transferred to the plaintiff in this action. The defendant having thereupon rested, the plaintiff offered to prove that Holbrook, on the day the check was given up by Mr. Bowen, exchanged this check with Clark for Clark's check of $2,000, which check was afterwards paid by Clark, this being before Clark paid the check to the Marine Bank. The counsel for the defendant objected to such proof as immaterial. The court sustained the objection, and excluded the evidence, and the plaintiff's counsel duly excepted.

The court directed a verdict for defendant, to which

plaintiff's counsel duly excepted, and exceptions were ordered
to be heard at first instance at General Term.

*Sherman S. Rogers*, for appellant. The contract of the
eastern creditors to pay Holbrook $2,000, if he would accept
the position of assignee in bankruptcy was valid. (*Gilmour* v.
*King*, 1 C. & M., 612.)   The Marine Bank was a *bona fide*
holder for value. (*Brown* v. *Leavitt*, 31 N. Y., 113; *Day* v.
*Saunders*, 3 Keyes, 347; *Lansing* v. *Gane*, 2 J. R., 300;
*Abel* v. *Sutton*, 3 Esp. Cas., 108; 1 Pars. Notes and Bills, 49,
51.)   The date was only *prima facie* evidence of the time
the check took its inception; the actual time could be proved
*aliunde*. (Chitty on Bills, 148, 149; Byles on Bills, 77, m.
p.; Story on Prom. Notes, § 45; 1 Pars. Notes and Bills,
49; Daniels on Neg. Inst., 52; *Brewster* v. *McCardell*, 8
Wend., 478.)   Defendant is estopped from saying to plain-
tiff that the bank took the check with notice of dishonor.
(*Boehme* v. *Sterling*, 7 T. R., 423; Story on Prom. Notes,
§ 492; Chitty on Bills [11th Am. ed.], 222; Bayley on
Bills, chap. 5, § 3, 164 [5th ed.]; 1 Pars. Notes and Bills,
272, note; Morse on Banking, 264; 1 Grant on Banking, 62,
note; 1 Daniels Neg. Instr., 550.)   No lapse of time between
the time a check is made and its negotiation, will of itself
discredit it as matter of law. (Story on Prom. Notes, § 491
and note; *Rothschilds* v. *Correy*, 9 B. & C., 388.)

*E. C. Sprague*, for respondent. The agreement of the
eastern creditors with Holbrook was illegal and void.
(*Hatch* v. *Mann*, 15 Wend., 44; *Gray* v. *Hook*, 4 N. Y.,
449; *Bell* v. *Leggett*, 7 id., 176; *Staples* v. *Gould*, 9 id.,
520; *Griffith* v. *Wells*, 3 Den., 226; *Barton* v. *P. T. J. P.
R. Co.*, 17 Barb., 397; *Sanderson* v. *Goodrich*, 46 id., 616;
*Nodine* v. *Doherty*, id. 59; *Brown* v. *Purkington*, 3 Wal.,
377; 2 Chitty on Con. [11th Am. ed.], 97.)   The check
being illegal could not be made valid by the subsequent
agreement sworn to by Holbrook. (2 Chitty, 971–973; *In
re Davenport*, 3 B. R., 18; *In re Pegues*, id., 19; *In re Tully*,

id., 19; *Curtiss* v. *Leavitt*, 15 N. Y., 9; *Leavitt* v. *Palmer*, 3 id., 19; *Gray* v. *Hook*, 4 id., 449.) The fact that the check was delivered to the bank over fourteen months after it was dated was sufficient to put the bank on inquiry as to any defenses thereto. (*Cowing* v. *Altman*, 1 T. & C., 494; *Down* v. *Halling*, 4 B. & C., 330; *Brooks* v. *Mitchell*, 9 M. & W., 15; 1 Pars. on Bills and Notes, 271; 2 id., 71, 278, 279; *Herrick* v. *Woolverton*, 41 N. Y., 58; *Losee* v. *Durkin*, 7 J. R., 70; *Sice* v. *Cunningham*, 1 Cow., 397, 407; *Morey* v. *Wakefield*, 41 Vt., 124; *Little* v. *Phœnix Bank*, 2 Hill, 426; *Alexander* v. *Birchfield*, 7 M. & G., 1061; *Weatherel* v. *Smith*, 9 Tex., 622; *Vairin* v. *Hobson*, 8 Louis. An. R., 404, 408; *Brown* v. *Tuber*, 5 Wend., 566.)

ANDREWS, J. We shall assume that the check in suit was given to carry out an agreement made in contravention of the forty-fifth section of the bankrupt act, for the payment to Holbrook of a compensation beyond the legal fees allowed by law for services as assignee in bankruptcy of the firm of Biesenthal, Falck & Israel, and was void in the hands of the payee by reason of the illegality of the consideration. But the bankrupt act does not expressly avoid a note or security taken upon such a transaction, and the check, notwithstanding the illegality of the consideration, would be valid in the hands of a *bona fide* holder for value, who took it before it was dishonored, without notice of the illegality. (*Rockwell* v. *Charles* 2 Hill, 499 ; Byles on Bills, 139.)

The Marine Bank was a holder for value. It received the check from Clark in payment of a note of the firm of Clark & Hazard, held by the bank of the same amount, and the bank surrendered the note when it received the check. This was a a parting with value. (*Brown* v. *Leavitt*, 31 N. Y., 113.) It must be assumed, in the absence of proof to the contrary, that the bank had no notice of the illegality of the check when it acquired title. The transferee for value of a negotiable instrument, tainted by fraud or illegality in its inception, to maintain

his action, is not bound to show, in addition to the fact that he received it for value before due, that he had no notice of the original infirmity in the paper. The burden of showing notice is upon the party who seeks to impeach his title. (*Goodman* v. *Harvey*, 4 Ad. & E., 870 ; Byles on Bills, 118.) But it is claimed that the check was dishonored when it was passed to the bank ; and if this claim is well founded then, as Holbrook, the payee, could not have recovered upon the check, neither can the bank, unless it can make an independent title under an intermediate holder, who purchased it for value and without notice before it was dishonored. But Clark's title was no better than that of the bank. He transferred the check to the bank on the same day he received it, and if it was dishonored when the bank took it, it was also dishonored when it was received by Clark.

The claim by the defendant that the check was dishonored when it came to the possession of the bank, rests upon the fact that it was dated March 8, 1871, about fourteen months before the time the bank received it. That such a lapse of time between the date, and transfer of a check affords a just presumption of dishonor, cannot, we think, be doubted. The date of a note or check is *prima facie* evidence of the time it was made and had its inception. (Chitty on Bills, 148 ; Byles on Bills, 77.) And a check found in the hands of the payee or third person fourteen months after its date, in the absence of explanation, must be deemed to be discredited. It would not necessarily be implied, from the mere lapse of time, that a check had been dishonored in fact ; that is, that it had been presented and that payment had been refused, or that it was overdue, in a strict sense. Usually no time of payment is expressed. It is payable presently, but the holder must in general demand payment of the drawee before he can sue the drawer, and the statute of limitations runs from that time. (*Murray* v. *Judah*, 6 Cow. 484.) But the retention of a check by the holder for a considerable time, without presentment, where no defense exists to it, is unusual, and this circumstance is sufficient to put a party taking it upon

inquiry, and a check dated as in this case, several months before its transfer, and which might have been presented at, or soon after its date, will, in the absence of explanation, be treated as overdue and dishonored, whether it has been actually presented or not, so as to let in defenses existing between the drawer and payee. (*Gough* v. *Staats*, 13 Wend., 549; *Little* v. *The Phœnix Bank*, 2 Hill, 425; *Down* v. *Halling*, 4 B. & C., 330; Daniels on Neg. Instruments, § 1633.)

But the date of a check or note is only presumptive evidence of the time it was issued. A check or note has no inception until delivery, and for all legal purposes it is to be considered as made on the day it is delivered. (*Lansing* v. *Gaine*, 2 J. R., 300.) And when the date and the time of delivery are not coincident, the time when it in truth has its inception, may be shown in answer to the plea of infancy or coverture, or to avoid the imputation that it was dishonored when received by the holder. (*Pasmore* v. *North*, 13 East, 517; Story on Notes, §§ 48, 491; Daniels on Neg. Inst., 65; *Boehn* v. *Sterling*, 7 T. R., 432; *Drake* v. *Rogers*, 32 Me., 544.) In *Boehn* v. *Sterling*, the defendants had delivered their check nine months after it bore date. Sometime thereafter it was negotiated by the holder to the plaintiffs who took it for value, and in good faith. As between the original parties there was a defense, and it was claimed that the plaintiffs took with notice of dishonor, and subject to the equities between the original parties, simply because they had taken the check so long after it bore date. LORD KENYON said : "All the difficulty is occasioned by the defendants themselves, who issued this bill with the objection, of which they now seek to take advantage, appearing on the face of it; but I am clearly of opinion on principles of law as well as justice, that it was not competent for them to take this objection." The defense was overruled, and the verdict for the plaintiffs was sustained. The case here is within the principle of *Boehn* v. *Sterling*, and the other cases we have referred to. It was

COWING v. ALTMAN. [Dec.,

Opinion of the Court, per ANDREWS, J.

admitted that the check was made on the day it bears
date, and by an agreement between Altman and the payee
was deposited with one Bowen for safe-keeping, and to be de-
livered to Holbrook when he was discharged from his position
of assignee in bankruptcy of Biesenthal, Falck, and Israel; that
it remained in the hands of the depositary until May 2, 1872,
on which day Holbrook was discharged, and on the same
day Bowen delivered it on Holbrook's order to Clark, who
immediately transferred it to the bank, and on the next day
it was presented for payment, and payment was refused.
The delivery by Bowen was in pursuance of the authority
vested in him by the drawer, which so far as appears had
never been revoked. It is the case, therefore, of a check
delivered by the drawer (through his agent), long after its
date to the payee, and on the same day transferred to a *bona
fide* holder for value without notice of any defense. The
check when it was taken by the bank appeared to be over-
due, and the bank took the risk of the apparent fact being
also the real fact. If the bank before taking the check, on
noticing the date, had inquired and ascertained that the
drawer had delivered the check on the day the bank received
it the apparent objection to the check would have been
removed. This information would have shown that in fact
it was not over-due or dishonored, nor would the bank have
been bound to go further. Take the case of a check nego-
tiated on the first day of January of one year, dated on the
first day of January of the preceding year. If the party
taking it from the holder had upon inquiry been informed
that it was delivered to him on the day it was negotiated,
and this was the fact, would he be bound to go further, and
inquire whether there was not some other objection to the
check? We think not. He would have relieved the paper
of the only suspicious circumstance attending it. He would
take the risk of the information not being true, and this is all;
and although he made no inquiry, if he took the check *bona
fide* for value, without notice of illegality or other defense,
and it turned out that it was in truth issued on the day it was

negotiated, he would stand in no worse position than if he had first inquired and been informed that it was so issued. In either case he took the risk only of the fact being true, which appeared to be true on an inspection of the paper, viz: that it was overdue and dishonored. If it was not true, and the paper was not overdue, his title would be protected, there being the other elements of a *bona fide* holding.

Upon the authorities and the reason of the matter, we think this judgment should be reversed. The plaintiff as the transferee of the bank stands upon its title.

The judgment should be reversed, and new trial granted. All concur.

Judgment reversed.