## VOSBURGH *v.* DIEFENDORF.

*(Supreme Court, General Term, Third Department.* May, 1888.)

1. NEGOTIABLE INSTRUMENTS—PROCUREMENT BY FRAUD—QUESTION FOR THE JURY.
   Where there is evidence in an action on a note that the payee induced defendant to give it for an interest in a patent-right, to represent the interest of a partnership composed of himself and defendant, and told him that it would not be transferred or presented for payment, and afterwards, in defendant's presence, pretended to burn it, it is a question for the jury to say whether the note was procured through fraud.

2. SAME—ACTIONS ON—BONA FIDE PURCHASER.
   In an action on a note defendant alleged that it was obtained through fraud. Plaintiff claimed to have acquired it from a *bona fide* purchaser. There was some evidence from which it could be inferred that the purchaser was acting as agent of plaintiff in buying the note. *Held*, that the question of agency should have been submitted to the jury.

3. SAME—ACTIONS ON—USURY—EVIDENCE.
   In an action on a note alleged to have been procured through fraud it appeared that the payee pretended to burn it in the presence of defendant, but afterwards transferred it for one-half its face value. *Held*, that the defense of usury was not sustained where the only evidence thereof was a grave suspicion that the note had its inception at the time of the transfer.

4. SAME—NOTE GIVEN FOR PATENT-RIGHT—BONA FIDE PURCHASERS.
   Under Laws N. Y. 1877, c. 65, providing that a note given for a patent-right shall be void unless there is written across its face, "Given for a patent-right," such a note without those words is valid in the hands of a *bona fide* purchaser.

Appeal from circuit court, Montgomery county.

Action brought by Howard Vosburgh against John F. Diefendorf, to recover on a promissory note as follows: "$2,000. GOUVERNEUR, N. Y., December 15, 1886. Sixty days after date I promise to pay R. T. Van Valkenburgh or bearer two thousand dollars at Spraker's National Bank, Conajoharie, N. Y., value received, with interest at six per cent. per annum. JOHN F. DIEFENDORF." The defenses were that the note was obtained by the fraud of the payee for one-third interest in a patent-right for fire-kindlers for the state of Iowa, and was given for a special purpose, and not to be transferred

nor paid by the defendant, but was to be canceled; that it was void for usury; that it was fraudulently negotiated, and that plaintiff was not a holder in good faith; that it was void because the words, "Given for a patent-right" were not written across its face, as required by chapter 65, Laws 1877. The evidence tended to show that the defendant, who was a farmer, was made the victim of a gross swindle by the payee of the note and one Henderson. At Rochester they first obtained eight of his notes, each for $1,000, in a so-called patent-right transaction, in which he understood he was, or was to be, admitted into the firm of which Van Valkenburgh and Henderson represented themselves to be members. Soon after, Van Valkenburgh induced defendant to go with him to Gouverneur. There Van Valkenburgh, pretending to act for the firm, apparently made a sale of an interest in the patent for two-thirds of the state of Iowa to Gardner and Wood for $8,000, each of them giving his note for $4,000 to Van Valkenburgh, and the defendant giving, at the request of Van Valkenburgh, as a matter of form, two notes of $2,000 each, of which the note in question is one, in order to represent the interest of the firm, but not to be used or paid, but to be destroyed. Van Valkenburgh, before they left Gouverneur, pretended to burn them up, but in fact burnt other papers. The other facts appear in the opinion. The court directed a verdict for the plaintiff, and the defendant appealed.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*Z. S. Westbrook,* for appellant. *M. Hale,* for respondent.

LANDON, J. The court directed a verdict in favor of the plaintiff for the amount he paid for the note, the plaintiff waiving his claim to recover for the full amount of the note. *Moore* v. *Ryder,* 65 N. Y. 438. The court held that the plaintiff was a *bona fide* purchaser for value, and therefore the defense of fraud in the inception of the note was not a defense against the plaintiff. There was sufficient evidence tending to establish the fact that the defendant was induced by fraud to give the note to require the submission of that question to the jury, if it had been material. If the defendant's testimony is to be believed, he did not give the note in purchase of any interest in a patent-right, but only gave it as a matter of form,—to represent, as he was induced to believe, the interest of the firm, of which he supposed he was a member with the payee and one Henderson in the third interest which the firm did not sell to Gardner and Wood. The fact that the payee subsequently sent the defendant, through the mail, a bill of sale of an interest in certain letters patent, might have been found by the jury to have had no more connection with the notes given by the defendant than if the defendant had sent him a newspaper. The jury may have believed that Van Valkenburgh led the defendant to believe that his giving his notes as a matter of form was in some way a formal part of the transaction with Gardner and Wood. Certainly, when Van Valkenburgh burnt up certain papers which he represented to the defendant were the notes given by the defendant, and that they were thus destroyed, it would do violence to common sense to suppose that either of them regarded the notes as the consideration of an executory agreement to give the defendant subsequently a bill of sale of an interest in letters patent. When the defendant received the bill of sale from the post-office, he did not know that he had been deceived with respect to the burning of his notes, and Van Valkenburgh is not a party to this case to assert that the bill of sale is a part of the transaction in which these notes were given; and, if he were, he would be probably defeated in his attempt to justify his claim to keep the notes on foot in support of a sale which he never suggested to defendant.

The question, then, is whether the court was right in holding as a matter of law that the plaintiff was a *bona fide* purchaser of the notes. The burden rests upon the plaintiff to prove his *bona fides*. When there is fraud in the inception of the note, as is said in *Seymour* v. *McKinstry,* 106 N. Y. 240, 12

N. E. Rep. 348, and 14 N. E. Rep. 94, the presumption is that he who is guilty will part with the instrument for the purpose of enabling some third person to recover upon it, and such presumption operates against the holder, and it devolves upon him to show affirmatively the facts essential to overcome that presumption, and relieve himself from its effect; citing *Bank* v. *Green*, 43 N. Y. 298; *Bank* v. *Carll*, 55 N. Y. 441; *Bank* v. *Noxon*, 45 N. Y. 762. Other cases are to the same effect. *Nickerson* v. *Ruger*, 76 N. Y. 279; *Wilson* v. *Rocke*, 58 N. Y. 642; *Bank* v. *Penfield*, 69 N. Y. 502. The opposite rule is held by the supreme court of the United States. *Murray* v. *Lardner*, 2 Wall. 110. That court, reaffirming *Swift* v. *Tyson*, 16 Pet. 1, distinctly holds that the burden of proof lies upon him who assails the right claimed by the party in possession. But our courts refuse to follow the supreme court of the United States in this respect. *McBride* v. *Bank*, 26 N. Y. 454; *Stalker* v. *McDonald*, 6 Hill, 93. Still, the plaintiff may recover, if he can prove that he succeeded to the rights of a *bona fide* holder, although he himself may have had notice of the defendant's equities. *Bank* v. *Noxon*, 45 N. Y. 765; Story, Bills, § 196. The plaintiff sought to avail himself of the latter rule. He claimed to have bought the note of one Richmond. Richmond was called as a witness, but the plaintiff was not. He testifies that he bought this note of Henderson—the same Henderson who was a member of the alleged firm with plaintiff and Van Valkenburgh in the patent-right business—for $1,000; that he had no notice or knowledge of any facts impeaching the validity of the note. But the testimony of Richmond is of such a character that a jury might have found that he bought the note of Henderson, not for himself, but for the plaintiff, and that in what he did respecting this note he was a mere intermediary, whom the plaintiff interposed to protect himself. Richmond bought of Henderson at the same time another note made by the defendant for $2,000. He testified that at the time he purchased these two notes he had some conversation with the plaintiff about it; that before he purchased them he made an arrangement with the plaintiff that he was to take one, and the plaintiff the other; that he bought the two notes for $2,000, and paid Henderson for them; that the plaintiff was present when he bought them of Henderson; that the plaintiff had agreed to pay the witness for one of them, and afterwards did so; that at the time Richmond purchased these notes he had already four other notes of the defendant for $1,000 each, which he had bought of Henderson; that plaintiff came with Henderson to witness when witness bought the first $1,000 note, and stood by the side of Henderson during the transaction; that Henderson was comparatively a stranger to the witness.

If, therefore, Richmond, in the purchase of the notes, was acting in behalf of the plaintiff respecting the note in suit, the plaintiff cannot shield himself behind the good faith of his innocent agent. The burden would still rest upon him to prove his own good faith; and we do not discover that he adduced any evidence tending to establish it. The fact that the plaintiff paid value for the note only maintains one part of the burden the law casts upon him. The remaining part, his good faith, is not established by proof that he paid value; certainly not by proof that he paid half value. We must not confound this case—in which the defendant, by his evidence, if the jury should believe it, has cast the burden of proving good faith upon the holder of the note—with cases in which the burden rests upon the defendant to impeach such good faith. We think, therefore, the defendant was entitled to have the case submitted to the jury upon the following questions: *First*. Was the note fraudulently obtained from the defendant or fraudulently issued by Van Valkenburgh? *Second*. Did the plaintiff purchase the note of Richmond, or from Henderson, through Richmond? It does not appear to us that there is any evidence of the plaintiff's good faith; but if all the circumstances may be said to afford some, then the third question would be, if the first two should

be found in favor of the defendant, did the plaintiff purchase the note in good faith?

Other defenses are raised by the defendant in the case which, in view of a new trial, it may be proper to consider. The defense of usury, we think, fails, in the absence of all evidence higher than grave suspicion that the note had its inception upon its transfer by Henderson to Richmond. Respecting the omission of the words, "Given for a patent-right," required by chapter 65, Laws 1877, to be written across its face, the court of appeals has recently held that, though the act itself is constitutional, the omission of the words does not impair the validity of the note, or take from a *bona fide* holder for value before maturity any of the rights secured to him by the law-merchant. The statute in question does not affect the present case. *Herdic* v. *Roessler*, 14 N. Y. 819.

The judgment should be reversed, and new trial granted; costs to abide event.