ADELBERT G. RICHMOND, APPELLANT, *v.* JOHN L. DIEFENDORF, RESPONDENT.

*A purchaser of a note, for half its face value, must show that he came honestly by it, when the maker proves that he was induced to sign it by fraud.*

In an action brought by the plaintiff to recover upon a promissory note made by the defendant, John F. Diefendorf, to the order of and indorsed by R. T. Van Valkenburg or bearer for $2,000, which was dated December 15, 1886, and made payable at Spraker's National Bank, Canajoharie, N. Y., the plaintiff claimed to have purchased the note of one H. D. Henderson before maturity and to have paid therefor fifty cents on the dollar, and that such purchase was made by him at the National Bank of Canajoharie, of which bank he was the cashier. Upon the trial he testified that he purchased another note of the same amount and paid to Henderson $2,000 for the two notes by drafts on Albany, which had been paid; that at the time he bought the notes he had no knowledge or information of any kind as to the consideration of the notes or what they were given for; had no knowledge or information that the notes were given for a patent-right or had anything to do with a patent-right; had no knowledge whatever that it was claimed that these notes were obtained by fraud, or that there was any defense claimed to the notes or either of them; had known Diefendorf twelve or fifteen years prior to that transaction; knew the fact that he was a farmer, and reputed to be the owner of a farm in Canajoharie, and believed him to be responsible; that he knew that other notes of the same maker to the amount of $8,000 were outstanding, $4,000 of which were held by the bank, of which the plaintiff was cashier; that he made no inquiry as to Henderson's business.

*Held,* that the plaintiff established a case at the trial which entitled him to recover upon the note, as a *bona fide* holder thereof for value.

*Vosburgh* v. *Diefendorf* (16 N. Y. State Rep., 493) distinguished.

APPEAL from a judgment recovered at the Montgomery Circuit Court, which was entered in the office of the clerk of the county

of Montgomery on June 18, 1888, and also from an order made in the said action and entered in the said Montgomery county clerk's office on June 14, 1888, denying the plaintiff's motion made upon the minutes of the justice presiding at the trial to set aside the verdict and for a new trial.

*Matthew Hale*, for the appellant.

*Z. S. Westbrook*, for the respondent

INGALLS, J. :

This action was brought by the plaintiff to recover upon a promissory note of which the following is a copy :

"GOUVERNEUR, N. Y., *December* 15, 1886.

"$2,000.

Thirty days after date I promise to pay R. T. Van Valkenburgh, or bearer, two thousand dollars at Spraker's National Bank, Canajoharie, N. Y., value received, with interest at the rate of six per cent per annum.

"JOHN F. DIEFENDORF."

The plaintiff claims to have purchased the note of H. D. Henderson, before maturity, and to have paid therefor fifty cents on the dollar, and that such purchase was made by him at the National Bank of Canajoharie. That the only persons who were present at such purchase were the plaintiff, Howard Vosburgh, and H. E. Henderson the person of whom the purchase was made. The plaintiff was examined as a witness in his own behalf and testified upon his direct examination as follows :

Am the plaintiff ; reside in Canajoharie, and am the cashier of the Canajoharie National Bank ; know the defendant. [Plaintiff's Exhibit A shown witness.] Have seen that note before ; first saw that note December 17, 1886 ; it was at the office of the Canajoharie National Bank ; it was brought there by Mr. H. D. Henderson ; there was another note of the same amount brought there at the same time ; I purchased those two notes ; paid him $2,000 for the two notes by draft on Albany ; have the drafts I paid him at that time in my possession.

Witness produced four drafts of $500 each drawn by the Canajoharie National Bank on the First National Bank of Albany, dated

December 17, 1886, payable to the order of H. D. Henderson, indorsed by H. D. Henderson, and also by other banks; they are returned canceled. The four drafts were received in evidence and marked plaintiff's Exhibits H to K, inclusive.

$500.                          " CANAJOHARIE NATIONAL BANK,
                    " CANAJOHARIE, N. Y., *December* 17, 1886.

" Pay to the order of H. D. Henderson, five hundred dollars.
" To FIRST NATIONAL BANK, Albany, N. Y.

" A. C. RICHMOND, *Cashier.*"

The other drafts, Exhibits I to K, inclusive, are the same amount, same date, and all drawn on the First National Bank of Albany, N. Y.

At the time I bought those notes I had no knowledge or information of any kind as to the consideration of the notes or what they were given for; had no knowledge or information that the notes were given for a patent-right or had anything to do with a patent-right; had no knowledge or information whatever that it was claimed that the notes were obtained by fraud, or that there was any defense claimed to the notes, or either of them; had known Diefendorf twelve to fifteen years prior to that transaction; knew the fact that he was a farmer, and reputed to be the owner of a farm in this county, and believed him to be responsible.

The plaintiff, upon his cross-examination, stated, among other things, that he borrowed of the bank the money with which he purchased the two notes; that he was, at the time, the cashier of the bank, and was also a stockholder and director thereof; that he had been acquainted with the defendant about fifteen years, and that defendant owned a farm, and he supposed him to be responsible; that he had a conversation with Vosburgh the morning of the day the notes were purchased, and before he saw Henderson; that he met Vosburgh in the street, and he informed the witness that the notes could be purchased, and at what price. Plaintiff further testified that he made no inquiry in regard to Henderson's business, nor as to the notes, nor in regard to the business relations between Henderson and Diefendorf. According to the plaintiff's evidence he purchased the note in question without any information as to what it was given for, and without any knowledge that fraud was connected with the execution of the note. The plaintiff was not impeached,

or even contradicted by any witness in regard to the facts to which he testified. The evidence, at most, only tended to cast suspicion over the transaction. The real question is whether the evidence justified the jury in discrediting the testimony of the plaintiff in regard to his good faith in purchasing the note, for if the plaintiff's version of the transaction had not been rejected by the jury, no such verdict could have been rendered by them. The circumstances which tended to create such suspicion in regard to the *bona fides* of the transaction, at most, called upon the plaintiff to explain his purchase of the note, and he accepted the requirement; and if his statement in regard to such purchase is to be believed, and we perceive no reason why it should not be, the plaintiff must be regarded as a *bona fide* purchaser of the note for value. (*Kelly* v. *Burroughs*, 102 N. Y., 93; *Dalrymple* v. *Hillenbrand*, 62 id., 5; *Chapman* v. *Rose*, 56 id., 137; Story on Bills of Exchange [3d ed.], § 188; *Hart* v. *Potter*, 4 Duer, 458.) The case of *Vosburgh* v. *Diefendorf* (decided by this court, and reported in 16 N. Y. State Rep., 493) is not, we think, in conflict with the view thus taken. In that case Vosburgh, the plaintiff, was not examined as a witness, and consequently made no explanation in regard to the good faith of his purchase, and the jury were left to infer, from the evidence adduced, whether or not he purchased the note in good faith and without notice of the fraud connected with its execution by the defendant. The court held that the circumstances of that case were such as to call for explanation. (*Seymour* v. *McKinstry*, 106 N. Y., 240.) It would seem that the plaintiff Vosburgh was the only person who could satisfactorily make such explanation, and he omitted to go upon the stand as a witness and state the facts in regard to his purchase of the note, and what knowledge he had acquired, if any, in regard to the consideration of the note and the circumstances which attended its execution. In that case Justice LANDON, at page 496, remarks: "The fact that the plaintiff paid value for the note, only maintains one part of the burden the law casts upon him, the remaining part, his good faith, is not established by proof that he paid value, certainly not by proof that he paid half value. We must not confound this case in which the defendant by his evidence, if the jury should believe it, has cast the burden of proving good faith upon the holder of the note, with cases in

which the burden rests upon the defendant to impeach such good faith." In the case at bar the plaintiff accepted the burden, and as a witness explained the transaction in regard to the purchase of the note in suit, and testified to his good faith in making such purchase. The missing link in *Vosburgh* v. *Diefendorf*, seems to have been fully supplied in this case by the testimony of the plaintiff. We are persuaded that the plaintiff established a case at the trial which entitled him to recover upon the note as a *bona fide* holder thereof for value. Doubtless the jury concluded that the defendant had fallen into the hands of sharpers and had been swindled by them, and upon evidence which was sufficient barely to create a suspicion in regard to the good faith of the plaintiff's purchase, virtually disregarded the plaintiff's evidence in their zeal to protect the defendant and rendered the verdict which they did. We are convinced that the judgment cannot be sustained without establishing a precedent which will impair confidence in commercial paper which should be protected.

The judgment should be reversed and a new trial ordered, with costs to abide the event of the action.

LEARNED, P. J., and LANDON, J., concurred.

LANDON, J.:

This case is substantially the same upon the facts as the case of *Vosburgh* v. *Diefendorf* (16 N. Y. St. Rep., 493), except with respect to the testimony affecting the good faith of the plaintiff in the purchase of the note. He bought it before maturity for one-half its face value. The jury have found, upon evidence sufficient to uphold the finding, that the note was procured from the maker by the fraud of the payee, and was sold to the plaintiff by one Henderson, who was cognizant of the fraud. In the Vosburgh case, Vosburgh, the plaintiff, offered no testimony touching his own good faith in the purchase of the note then in suit; that note was made at the same time as this note, and as a part of the same fraud practiced upon the defendant. The present plaintiff was his intermediary in the purchase of the note, and we held that Vosburgh could not establish his own good faith by showing that the agent whom he procured to purchase the note did so in good faith; for he might have interposed him to protect himself. Richmond, who

was the agent in that case, is the plaintiff in this. His testimony is to the effect that he had no knowledge or information respecting the consideration of the note, or that there was any claim by the maker that the note was procured by fraud, or that any claim of defense existed respecting it. He was cross-examined at great length, and we do not discover that any evidence was elicited, or fact shown, tending to impeach his statement. No other testimony is adduced tending to show that any fact was brought to his knowledge which would naturally give him any intimation of the fraud practiced by the payee of the note upon the defendant. It is true that he is interested; that he paid half value; that he knew that eight other notes of the same maker, to the amount of $8,000, were outstanding, $4,000 of which were held by the bank of which the plaintiff was cashier; that he knew little of Henderson, the holder of the note in suit; did not know where he lived, what his business was, or his character. The plaintiff asked nothing about the consideration of the notes. There is not any ground' to suppose that he knew any fact which he did not disclose. No suggestion is made of any such knowledge. It is true that the fact that so many of the defendant's notes were outstanding and offered for sale by a stranger was unusual. Did that circumstance imply that the defendant had been the victim of a fraud? Why should it? The law does not presume fraud. The circumstances possibly implied an unusual expansion of his credit; but when a person gives a series of notes, the presumption naturally is that he does so in order to benefit himself, not that he has been victimized by swindlers. The law exacts from the plaintiff good faith; that is, if he has notice of the fraud practiced upon the defendant, he shall not volunteer his aid in making the fraud successful, and thereby become *particeps criminis.* It is reasonable that he who has the fruits of fraud or crime in his hands, even though they be mercantile paper, should show that he came honestly by them. His honesty or good faith is shown when the evidence excludes the inference of his dishonesty. He may be negligent, he may be suspicious; but the law does not exact active vigilance with respect to facts extrinsic of the paper. It simply requires that he shall have no notice, actual or constructive, of the fraud, and he is not bound to institute inquiry unless he is advised of some fact, as distinguished from a mere surmise of a fact,

tending to impair the character of the paper. (*Chapman* v. *Rose*, 56 N. Y., 137; *Welch* v. *Sage*, 47 id., 143; *Seybel* v. *National Currency Bank*, 54 id., 288.)

If the plaintiff had paid full value for the note, in the usual course of business before maturity, that alone would be *prima facie* proof of his good faith. (*Dalrymple* v. *Hillenbrand*, 62 N. Y., 5; *Cowing* v. *Altman*, 71 id., 435.) When he pays half value or substantially less than its face value, clearly the transaction implies some defect. It may impeach the responsibility or integrity of the maker of the paper, or it may impeach the genuineness of the paper itself. Clearly the plaintiff should explain what occasions this large disparity between the nominal value and the actual price. (*Huff* v. *Wagner*, 63 Barb., 215, 235.) Here he made the explanation, to the effect that the fact that the defendant had issued so many notes, some of which the plaintiff's bank had purchased, led him to desire to get this one which first fell due, and to try to purchase it at a reduced rate. Nothing was disclosed or shown touching the fraud practiced upon the defendant, and as the case stood the plaintiff was shown to be a *bona fide* holder of the note to the amount of his payment for it. He was entitled to have the verdict directed for that amount. (*Moore* v. *Ryder*, 65 N. Y., 438.)

Judgment reversed, new trial granted, costs to abide the event.

LEARNED, P. J., concurred.

Judgment and order reversed, new trial granted, costs to abide event.