J. B. Bates et al., Appellees, v. John Dwinell, Appellant.

Filed October 13, 1917. No. 19494.

Statute of Frauds: Sales: Payment by Check. In the absence of proof that a check given to the seller by the purchaser was given under agreement that it should constitute payment or part payment of the price, rather than the means of payment, the check (neither paid nor presented for payment, but tendered back to the maker the day after) was not such payment as to take the sale out of the statute of frauds.

Appeal from the district court for Knox county: Anson A. Welch, Judge. *Reversed.*

*Fawcett & Mockett, Richard Steele* and *W. A. Meserve,* for appellant.

*Fred H. Free* and *J. W. Blezek, contra.*

Cornish, J.

This is an action for damages for refusal to deliver cattle purchased by plaintiffs from defendant. Plaintiffs recover. Defendant appeals.

The question is whether the check for $5,000 on the Knox County Bank, given by plaintiffs to defendant for the cattle, constitutes payment so as to take the tran-

saction out of the statute of frauds; the defendant dis-puting the correctness of its amount, having, the morn-ing after receiving it, tendered the check back to plain-tiffs without having presented it to the bank for pay-ment, and the contract being oral. The statute is in its nature technical. To serve its purpose the payment must be absolute. The courts have generally regarded such use of a check as a means to payment; as taken in lieu of cash temporarily for convenience, not amounting to payment until cash is received upon it; or, as it might be stated, it is a mode of making a cash payment, and not the giving or accepting of a security. Such holding, we believe, reflects the facts of the transaction. Of course, if a check were taken under an agreement that it should constitute payment and discharge the debt, so that the creditor would hold it at his own risk, as respects the money in the bank, the case would be different.

The evidence shows that the maker of the check had only $1,500 in the bank at the time. This being true, the check did not assign the $1,500. If the $3,500 additional was to be advanced in the nature of a loan, it would be a loan in excess of the amount permitted by the banking law to a bank of this bank's capital, $10,000. The cashier swore that the check would have been paid if presented. It is doubtful if the court will presume that the bank would have paid the check according to the cashier's promise, but rather that the bank would have refused payment, according to law.

For cases bearing upon the question considered, see *Groomer v. McMillan*, 143 Mo. App. 612; *Hessberg v. Welsh*, 147 N. Y. Supp. 44; *McLure v. Sherman*, 70 Fed. 190; 22 Am. & Eng. Ency. Law (2d ed.) 569; 29 Am. & Eng. Ency. Law (2d ed.) 970.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., not sitting.

HAMER, J., dissenting.

I am quite unable to agree with the views expressed in the majority opinion. It treats the check as if it did not constitute a payment. The defendant accepted it at the time it was delivered to him, and the fact that he subsequently undertook to return it, and dropped it at the feet of the man from whom he received it, does not do away with the acceptance in the first instance. The check was received as payment for 64 cattle sold by the defendant, John Dwinell, to the plaintiffs Bates and Jiracek. No objection was made to the check. It was delivered by agreement as full payment. The petition alleges that Dwinell was the owner and in possession of the cattle in Knox county, Nebraska, and that the defendant offered to sell the cattle to the plaintiffs at the lump sum of $5,000, that the offer was accepted, and that the plaintiffs paid the defendant the said sum of $5,000 in the form of a bank check drawn by the plaintiffs in favor of the defendant upon the Knox County Bank of Verdigre, Nebraska. There is also the further statement that the plaintiffs purchased the cattle for shipment, and that the cattle were reasonably worth $5,750. It is claimed that the plaintiffs' loss in profits was $600 by reason of the fact that the defendant refused to deliver the cattle. The answer is a general denial. The evidence shows that there was a refusal to deliver the cattle. At the time the check was returned it had not been presented. No one could say that it would not be paid, and the cashier of the bank testified that if the check had been presented the bank would have paid it. The contention of the defendant is that the contract for the sale of the cattle was not in writing and subscribed by the party to be charged thereby. To my mind the facts seem to show that the defendant concluded to "back out," and that he went over to Jiracek's, and told him that there was a mistake in figuring the cattle and threw the check down at Jiracek's feet. To any one familiar with this sort of transaction the case is the plainest sort of "back out." The judgment of the

district court should have been affirmed by this court.

I examined the cases cited in the majority opinion. As I understand them they do not apply, except the first case cited, *Groomer v. McMillan,* 143 Mo. App. 612. In *Hessberg v. Welsh,* 147 N. Y. Supp. 44, the payment of the check was stopped. Of course, in such a case as that, giving the check did not pay the debt. In *McLure v. Sherman,* 70 Fed. 190, it was held: "A check drawn upon a deposit in the bank named as drawee has a money value, and is a sufficient part payment of the price, upon a sale of personal property, within the statute of frauds." It will be seen that this case is in conflict with the majority opinion. In 22 Am. & Eng. Ency. Law (2d ed.) 569, it is said: "In case the check is not honored upon due presentation the original indebtedness for which it was given continues to exist." That is undoubtedly true.

In section 312, Rev. St. 1913, there is a provision limiting the power of a single corporation transacting a banking business to make a loan to any one party exceeding 20 per cent. of its paid-up capital and surplus. But in the same section it is said: "But the discounting of bills of exchange, drawn in good faith, against actually existing values, and the discounting of commercial paper actually owned by the persons negotiating the same, shall not be considered as money borrowed." It will be seen that this provision permits a credit outside of the 20 per cent. of paid-up capital. It permits such credit when it is obtained against actually existing values. There was nothing to prevent the bank from using the credit obtained by reason of the cattle. The cattle could have been shipped to market in the name of the bank, or the plaintiffs could have extended their credit in the bank by drawing on their salesman at Omaha, or on the packers to whom he might sell them. It does not follow that the bank intended to do any thing unlawful, or that the check would not have been paid.

In *Brown v. Wade,* 42 Ia. 647, it was said: "It seems to us there can be no question that the facts stated in this branch of the instruction amount to a delivery and

acceptance of the cattle. What constitutes a delivery depends largely upon the character and situation of the property. The delivery of a key of a warehouse, or making an entry in the books of a warehouse-keeper, or delivering with indorsement a bill of lading or a receipt, constitutes such delivery of personal property as will satisfy the statute of frauds."

In *Cowing v. Altman*, 5 Hun (N. Y.) 556: "One H., at the request of several of the creditors of a bankrupt, consented to act as assignee, on condition that they would pay to him the sum of $2,000 in addition to his legal fees. Subsequently the defendant bought up the claims against the bankrupt, agreeing with the creditors to pay the said sum to H., and in pursuance of this agreement he subsequently gave a check for that amount, upon which this action was brought. Held, that the agreements were illegal, under section 45 of the bankrupt act, and that as they were still unexecuted, this court would not enforce them." Subsequently this case was reversed in *Cowing v. Altman*, 71 N. Y. 435, where it was held that the check "would be valid in the hands of a *bona fide* holder for value, who took it before it was dishonored, without notice of the illegality."

Dwinell took the check. He agreed with the purchasers that they might come in the morning and get the cattle. Dwinell had agreed to feed the cattle the same as they had been fed. Was he not the agent of the purchasers for that purpose? The jury had the witnesses before them. They had an opportunity to judge of the fact as to whether Dwinell told the truth. They decided against him. What business have we to upset the verdict of the jury? We cannot do so unless it was clearly wrong. *Blado v. Draper*, 89 Neb. 787; *Boyd v. Lincoln & N. W. R. Co.*, 89 Neb. 840; *Goos v. Chicago, B. & Q. R. Co.*, 84 Neb. 651; *Sheridan Coal Co. v. Hull Co.*, 87 Neb. 117; *Bell v. Stedman*, 88 Neb. 625.

Where the evidence is conflicting it is the province of the jury to decide questions of fact, and a reviewing court cannot interfere. *Jacobs v. Goodrich*, 90 Neb. 478.

The claim is made that the cattle were worth $84 a head. There were 64 cattle. If one animal costs $84, it follows that 64 head at that price were worth 64 times as much, which would be $5,376. The claim is made that defendant thought the cattle would come to even $5,000. When did multiplying 4 by 4 produce 0? No wonder the jury found as they did in the face of such testimony as this. The facts show that there was a lump sum agreed upon. The verdict of the jury establishes their finding against Dwinell.

When a check is given to a person in the ordinary course of business it is of such value that the person who receives it cannot look to the drawer of the check for the amount named therein until he has presented the check to the drawee or payee for payment, and payment has been refused. *Murray v. Judah,* 6 Cow. (N. Y.) *484; *Cowing v. Altman,* 71 N. Y. 435; *Little v. Phenix Bank,* 2 Hill (N. Y.) 425; *Cruger v. Armstrong,* 3 Johns. Cas. (N. Y.) 5. "Under the authorities, I think a check, such as those described in this case, must be considered to have a money value. It is certain they would be so considered by those dealing in such securities." *McLure v. Sherman,* 70 Fed. 190.