A. Franklin Mahoney, J.
In this CPLR article 78 proceeding, petitioners, members of the Security Services Unit for which Council 82, American Federation of State, County and Municipal Employees, AFL-CIO, is the duly recognized and certified bargaining agent, seek for themselves and for all other members of the class of employees of the State of New York in the negotiating units commonly referred to as the Administrative Services Unit, the Institutional Services Unit, the Operational Services Unit and the Professional, Scientific and Technical Services Unit, an order (1) annulling penalty deductions from the salaries of petitioners and all others sued for as and for a fine by reason of an unlawful strike participated in by petitioners and others on April. 1 and/or 2, 1972 as determined by the Director of the Office of Employee Relations of the State of New York on April 29, 1972 (Civil Service Law, § 210, subd. 1; subd. 2, pars, [d], [g]), (2) ordering and directing the Comptroller of the State of New York to pay over to the petitioners and all others similarly situated the amount of the fine or penalty with interest thereon, and (3) enjoining and restraining the Comptroller from hereafter imposing any loss of pay upon petitioners and the class they represent because of absence from emplovment on April 1 and/or 2,1972.
The requested relief is predicated on the argument that the salary deductions were unlawful in that the Comptroller failed to comply with the provisions of section 210 of the Civil Service Law by making the payroll deductions more than 90 days following the date of the determination that a violation of subdivision 1 of section 210 of the Civil Service Law had occurred on April 1 and/or 2,1972.
Petitioners’ papers tacitly admit participation in a strike on April 1 and/or 2,1972 in that they do not seek recompense of one day’s unauthorized absence. Rather, they merely seek to recover the forfeiture of the additional day’s pay for each day of unauthorized absence imposed by the State (Civil Service Law, § 210, subd. 2). Next, the petitioners do not challenge the fact that a *645 determination of a violation of section 210 of the Civil Service Law was made by the proper executive officer and that proper notice was given to all employees affected by the determination (Civil Service Law, § 210, subd. 2, pars, [d], [e]).
It remains, then, only to ascertain if the Bureau of Payroll Audit in the Division of Audits and Accounts in the Department of Audit and Control made the payroll deductions in accordance with the following language of paragraph (g) of subdivision 2 of section 210 of the Civil Service Law which, in pertinent part, states, “ (g) Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision ”.
In this connection both petitioners and respondents agree that since the date of the determination that an unlawful strike had occurred was April 29,1972, the last day of the 90-day statutory period on which the respondent Comptroller could impose the fine was July 28, 1972. The respondents have submitted the affidavit of the Director of Payroll Audit in the Department of Audit and Control wherein he swears that on July 24,1972 payroll No. 9 for State institutional employees was received and processing of the same began on that date and was completed on July 28,1972 when the checks for the employees were printed reflecting the fines challenged herein. The petitioners do not dispute these affirmations. Neither do respondents refute petitioners’ claim that the subject checks were delivered to the employees on August 2, 1972, some five days beyond the alleged statutory permissible period, albeit, the end of the payroll period.
While judicial protection should be given those who work for a living, particularly in those instances where legislation is designed to penalize by fine certain employee misconduct, such protection cannot be arbitrarily granted where the statutory language is so clear and precise as to remove any ambiguity concerning the legislative intent. Given an unauthorized absence and proper executive determination of that fact, coupled with proper notice, the next step in the legislative scheme to reprimand such conduct is that ‘ the chief fiscal officer * * * shall deduct from the compensation of each such * * * employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision ” (Civil Service Law, § 210, subd. 2, par. [g]). The *646 petitioners insist that no funds were “deducted” from their paychecks until they were delivered to them on August 2, the end of the payroll period and five days beyond the permissible 90-day Statute of Limitations set forth in paragraph (g) of subdivision 2 of section 210 of the Civil Service Law. In my view, none of the case law or statutory authorities cited by petitioners supports their contention. Bliss v. Lawrence (58 1ST. Y. 442) stands for the principle that salaries of public employees are payable after work is performed and not before. Next, the case law cited to support the maxim that a check has no valid inception as a legal instrument until delivery (Cowing v. Altman, 71 N. Y. 435; Gale v. Miller, 54 N. Y. 536; Irving Trust Co. v. Leif, 253 N. Y. 359), while true, has no application to the facts herein.
It must be presumed that the Legislature was aware of the various methods of employee compensation utilized by the State, including the method of biweekly payment. Indeed, the last sentence of paragraph (g) of subdivision 2 of section 210 of the Civil Service Law recognizes that in those instances “ where the employee’s annual compensation is paid over a period of time which is less than fifty-two weeks, that period of time between the last day of the last payroll period of the employment term in which the violation occurred and the first day of the first payroll period of the next succeeding employment term shall be disregarded and not counted”. This is legislative recognition that the 30 to 90 limitation is not capable of exact determination in all instances and, doubtless, was why it chose to employ the verb ‘ ‘ deduct ’ ’ rather than ‘ ‘ pay ” or “ deliver ’ ’ when drafting section 210 (subd. 2, par. [g]) of the Taylor Law. If the legislative intent were otherwise, i.e., that a deduction did not take place until delivery, then, in effect, the longer period of limitation (90 days) would, in all instances where payday didn’t coincide with the 90th day of limitation, have to be shortened to the number of days that would equate with the previous payday of the employee sought to be fined. In that context the 90-day limitation would be meaningless. Next, if the respondents were to deliver the checks on the day the deductions were made they would have either to make the deductions and delivery of the checks simultaneously and thereby be deprived of the full 90-day period allowed by the statute, or deliver the checks before all the work had been performed by the employees. The latter alternative would be in violation of the State Constitution.
*647 In my view, this was not the legislative intent. I find that the choice of the verb ‘ ‘ deduct ’ ’ was deliberate; that it is not synonymous with “ deliver ’’and, further, that the respondent, given the unauthorized absence and the proper determination with notice, did “ deduct ” the fine on the last day of the 90-day limitation.
The petition is dismissed.