ELLA TREADWELL, Respondent, *v.* JONAS A. LINCOLN, Appellant.

*N. Y. Supreme Court, Second Department, General Term, May* 13, 1889..

1. *Note. Transfer. Per-existing debt.*—A person, who takes a promissory note before maturity in payment of a pre-existing debt, without parting with any new consideration, takes it subject to the equities existing between the original parties.

See Note at the end of this case.

2. *Same. Defense.*—The fact that a note was given for money advanced upon an agreement to be repaid from the proceeds of certain sales, and on payment to be destroyed, and not to be transferred, is no defense in an action on the note by the payee, or an indorsee for an existing debt, though before maturity.

Appeal from a judgment entered on the report of a referee.

*Frank Moss* for appellant.

*Cephas Brainerd* and *Cephas Brainerd, Jr.*, for respondent.

DYKMAN, J.—This is an appeal from a judgment entered on the report of a referee. The action was brought upon a promissory note, made by the defendant, Jonas A. Lincoln, to William M. Bruce, for $3,500, and indorsed and delivered over to the plaintiff, Ella Treadwell, who now claims to be the owner thereof.

The defense of the note arises in this way: Prior to June, 1886, the defendant employed Mr. Bruce, the payee of the note, who was a lawyer, to purchase for him certain real estate in the city of Brooklyn, and gave him about $5,000 to use in making the purchase.

The property was purchased, and in the latter part of June, 1886, the defendant requested Mr. Bruce to advance to him

upon the property the sum of $3,500, to be repaid from the proceeds of the sales, and the money was so advanced, and the note in suit was given for that money.

The insistence of the defendant being that it was to have the legal effect of a receipt only, and was not to be indorsed or negotiated or transferred to any person, but was to be held by Mr. Bruce, who was to deduct the amount from the proceeds of the sales, as they were realized, and destroy the note.

Such, doubtless, was the understanding of the transaction by the defendant, but whether such was the legal effect of the transaction, is very questionable.

The referee has found that the money was loaned to the defendant, and that the note was given for such loan, and that before the maturity of the note, it was transferred by the payee for value received, to the plaintiff, without notice of any equities in the defendant Lincoln in respect to the note, except that it was transferred to, and taken by the plaintiff, in payment of a pre-existing debt, and that the plaintiff parted with no new consideration therefor. The facts, so found, are sustained by the testimony, and the inferences which may be legitimately drawn therefrom. The reception of the note by the plaintiff in payment of a pre-existing debt without parting with any new consideration, was sufficient to give her title to the note, but no better title than the original payee had before its transfer, and she received it, subject to the equities existing between the original parties.

There was a sufficient obligation on the part of Mr. Bruce to support the transfer of the note to her, so that the question between the plaintiff and the defendant is the same as it would be if the action had been brought upon the note by Mr. Bruce himself.

In respect to the equities between the maker and the payee of the note, it does not appear that Mr. Bruce was

indebted to the defendant at the time the note was given, and the statement of Mr. Bruce that the note would not be transferred or negotiated, was entirely insufficient to prevent him from maintaining an action upon it at any time, and, so far as we can discover, if an action had been brought upon it, when it became due, it could have been maintained, and the defendant could have made no successful defense in such an action.

It is a sufficient test of that position that the defendant, at that time, could have maintained no action against Bruce for money then in his hands belonging to the defendant, or for any other reason.

The plain purport of the transaction between the parties at the time of the execution of this note, is this : Sales had been made of some of the property which had been purchased for the defendant, and he desired to realize or obtain some moneys and he asked for the advancement of some money, in expectation of its future receipt from the sales of the land,

His lawyer was willing to make such advances and give him money, but only on the receipt of a note, which the defendant consented to give. There is no proof of any fraud or misconception in the transaction, and if the subsequent transfer of the note by the payee to Mrs. Treadwell was not expected by the defendant, or was not, at the time, intended by the payee, or even if he at that time expected and intended to receive sufficient money from the proceeds of the land to pay the note, and to destroy it, in that event, which expectations were not realized, and which intentions were not carried into effect, they all constitute no defense to this action, and we see no escape for the defendant, from the payment of the notes.

The judgment appealed from should, therefore, be affirmed with costs.

All concur.

NOTE ON BONA FIDE HOLDERS OF NEGOTIABLE PAPER.

The question presented is who is a *bona fide* holder of negotiable paper for value, his rights and liabilities. In presenting it, all the late cases in this state, have been examined and discussed, and the greater portion of the earlier decisions have been reviewed.

Every person to whom negotiable paper is lawfully transferred, for value, before maturity, was held in Gould *v.* Segee, 5 Duer, 260, to be a *bona fide* holder; and the consideration paid is immaterial, except as bearing on the question of actual or constructive notice.

*What care necessary.*—Mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder. Bad faith alone will deprive him of that character. Chapman *v.* Rose, 56 N. Y. 137; Welch *v.* Sage, 47 Id. 143; Seybel *v.* Nat. Currency Bk., 54 Id. 288; Murray *v.* Lardner, 2 Wall. 110; Goodman *v.* Simonds, 20 How. 452. A purchaser, for value advanced, of negotiable paper, including bonds, is not bound to exercise such care and caution as wary, prudent men would exercise. Welch *v.* Sage, *ante.* It is simply a question of good faith in the purchaser. Id. Notice of the defense to defeat a recovery, means substantially notice of such facts as will make a defense, or will necessarily lead the mind to believe in its existence, not merely notice of such facts as will put a prudent man upon inquiry. Id. This rule puts the consequences of neglect or misfortune upon the party who has negligently put such paper in circulation, or from whom it has been stolen. Id. The title of a purchaser for value of stolen negotiable paper, including bonds payable to bearer, is not impaired by negligence, but will be defeated only by proof of fraud or bad faith. Id.

And in Seybel *v.* Nat. Currency Bk., *ante*, it was held that one who purchases negotiable paper before due for a valuable consideration, in good faith and without actual knowledge or notice of any defect of title, holds it by a title valid as against every other person; and that mere suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, without bad faith on his part, will not defeat his title.

One who purchases commercial paper for full value before maturity, without notice of any equities between the original parties, or any defect of title, is to be deemed a *bona fide* holder. He is not bound, at his peril, to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. Magee *v.* Badger, 34 N. Y. 247. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. Id.

Both in England and in this state, up to a certain period, the doctrine of constructive notice was applied to transfers of commercial paper, and any facts sufficient to put a puchaser of negotiable paper on inquiry were held

sufficient to defeat his claim to be a *bona fide* holder, if he neglected to make the proper inquiries. Parker *v.* Conner, 93 N. Y. 118. In England this doctrine was overthrown in the cases of Crook *v.* Jadis, 5 B. & Ad. 909; Backhouse *v.* Harrison, Id. 1098, and Goodman *v.* Harvey, 4 A. & Ell. 870, and the law was declared that actual *mala fides* must be shown to the satisfaction of the jury to deprive a holder for value of the character of a *bona fide* holder, and that negligence in not inquiring into facts which ought to have put him on inquiry is not sufficient. And in Magee *v.* Badger, 34 N. Y. 247, and Belmont Branch Bk. *v.* Hage, 35 Id. 65, the recent English doctrine in respect to transfers of commercial paper, which was rejected by Judge Duer in Pringle *v.* Phillips, 5 Sandf. 157, was authoritatively adopted by the court of appeals, and it was held that circumstances sufficient to put the purchaser on inquiry were not sufficient to deprive him of the character of a *bona fide* holder; that he was not bound to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance, and that the rights of the holder were to be determined by the simple test of honesty and good faith, and not by a speculative issue as to diligence or negligence. Id.

The rule is that a purchaser of stolen negotiable securities for value will be protected, unless the circumstances are such that an inference could be fairly and legitimately drawn that the purchase was made with notice of a defective title in the seller, or in bad faith. It is not sufficient that a prudent man would be put upon inquiry, nor that the purchaser was negligent, nor that he did not exercise a proper degree of caution. A purchaser of such securities for value will be protected, if he is honest and believes that the seller has a good title. Dutchess Co., M. Ins. Co., *v.* Hachfield, 73 N. Y. 226; Welsh *v.* Sage, *ante ;* Evertson *v.* Nat. Bk. 66 Id. 14; Chapman *v.* Rose, *ante ;* Magee *v.* Badger, *ante.*

The rule in respect to commercial paper is such that a party taking it in regular course of business for value before maturity, has the right to assume that it is valid, and it will be so treated in his hands, until it is shown to have been void by force of some statute, or until it is made to appear that when he received it, he was chargeable with notice of facts which, as betwen the parties to it, would be available as a defense to defeat the recovery upon it. Matson *v.* Blossom, 50 Hun, 600; Welch *v.* Sage, *ante ;* Seybel *v.* Nat. Currency Bk., *ante ;* Dutchess Co., Mut. Ins. Co. *v.* Hachfield, 73 Id. 228 ; Parker *v.* Conner, *ante.* He in the outset has the benefit of the presumption that he became the holder of it in good faith for value. And the duty is not imposed upon him of inquiry into the circumstances under which the note was given. Id.

*Burden of proof.* A holder of a note shown to have been fraudulently obtained, is required to prove under what circumstances and for what value he became the holder. Seymour *v.* McKinstry, 106 N. Y. 240. When there is fraud, the presumption is that he who is guilty will part with the instrument for the purpose of enabling some third person to

recover upon it. Such presumption operates against the holder, and he must affirmatively show the facts essential to overcome that presumption and relieve himself from its effect. Id.; First Nat. Bk. *v.* Green, 43 N. Y. 298; Ocean Bk. *v.* Carll, 55 Id., 441; Farmer's Bk. v. Axon, 45 Id. 762 ; Vosburg *v.* Dieffendorf, 48 Hun, 619; aff'd 119 N. N. 357; Nickerson *v.* Ruger, 76 N. Y. 279; Wilson *v.* Roche, 58 Id. 643.

The cases of Dalrymple *v.* Hillenbrand, 62 N. Y. 5, and Cowing *v.* Altman, 71 Id. 435, do not decide any principle with respect to the burden of proof in cases where it is shown that negotiable paper has been procured from the maker by fraud, inconsistent with the rule above stated. Vosburgh *v.* Deefendorf, *ante.*

A plaintiff, suing upon a negotiable note or bill, purchased before maturity, is presumed, in the first instance, to be a *bona fide* holder. But when the maker has shown that the note was obtained from him under duress, or by fraud, the holder will then be required to show that be gave value for the note, and under what circumstances he became the holder. First Nat. Bk. *v.* Green, 43 N. Y. 298. The court of appeals, held in this case that the ground taken at the general term, that the burden of proof was on the defendant, not only to show the defense of duress, but also to impeach the title of the plaintiff as a *bona fide* holder for value, cannot be sustained.

The possession of a note is sufficient *prima facie* to establish that the plaintiff is a *bona fide* holder of the note upon which the action is brought; but when it is shown that the note was given without consideration, and fraudulently put into circulation, it is incumbent upon the plaintiff to prove such good faith. Ocean Nat. Bk. *v.* Carll, 55 N. Y. 440.

Proof that a note has been diverted from the purpose for which it was delivered by the maker, casts upon the holder the onus of showing that he is a *bona fide* holder, or has succeeded to the rights of such a holder. Farmers and Citizens' Nat. Bk. *v* Noxon, 45 N. Y. 762, Wendell *v.* Howell, 9 Wend, 170. In the first of the above cited cases, it was held that the plaintiff, in taking a note as security for a loan to a person intrusted with it to negotitate and use the proceeds to pay another note of the maker, is a *bona fide* holder, though diverted from the intended pnrpose, in case the note was not received under circumstances of suspicion sufficient to put plaintiff on inquiry and which would have led to a discovery of the diversion.

In Wilson *v.* Locke, 58 N. Y. 642, it was held that, while it was true that where a note is obtained from the maker by fraud or duress, or is negotiated in fraud of the rights of the real owner, the onus is upon the holder of showing that he acquired it in good faith and for value, the correctness of an assumption made by both court and counsel on the trial that plaintiff was such purchaser could not be disputed upon appeal, as no question in reference thereto was raised upon the trial, and no request made to submit it to the jury.

Proof that the note was without consideration and made for the accom-

modation of the payee, and fraudulently put in circulation and diverted from the use intended, renders it necessary for the indorsee to prove that he is a bona fide holder of the note for value, in order to succeed in the action. Nickerson *v.* Ruger, *ante.*

Where the holder of negotiable paper appears to be a purchaser for full value before maturity, the burden is on the maker, of proving that such holder had notice of any fraud on the part of, or unauthorized use of the paper by, the original holder. Dalrymple *v.* Hillenbrand, *ante.*

A check given to carry out an agreement made for the payment, to an assignee in bankruptcy, of a compensation beyond the fees allowed by law, though void in the hands of the payee, is valid in the hands of a *bona fide* holder for value, who took it before it was dishonored, without notice of the illegality. Cowing *v.* Altman, *ante.* To defeat it, the burden of showing that the transferee had notice of the infirmity in the papers, is upon the party seeking to impeach his title. Id. A check, found in the hands of the payee or a third person a considerable time after its date, will be deemed to be discredited, and a party taking it is put upon inquiry, and, in the absence of explanation, takes subject to any defense existing as between the payee and drawer. Id. But where the date and the time of delivery are not the same, the latter may be shown in answer to any such defense; and the party negotiating for it, after ascertaining such fact, is not bound to go further and inquire as to any other objection to it; and if he takes it *bona fide*, for value, without notice of illegality or other defense, though without inquiry as to the time of its delivery, and it appears that it was in fact delivered on the day it was negotiated, he stands in no worse condition than though he had first inquired and been informed of this fact. Id. Wilson *v.* Metropolitan R. Co., 120 N. Y. 145.

Where the maker has, by his evidence, cast the burden of proving good faith upon the holder of the note, the fact that the latter has paid value for the note only maintains one part of the burden which the law casts upon him, but the remaining part, his good faith, is not established by proof that he paid value, certainly not by proof that he paid one half of its face value. Vosburgh *v.* Diefendorf, 48 Hun, 619.

In Vosburgh *v.* Diefendorf, *ante*, the plaintiff, after proof that the note was procured from the maker by the fraud of the payee, and was sold by one who was cognizant of such fraud, offered no testimony touching his own good faith in the purchase of the note in suit. And the case in Richmond *v.* Diefendorf, 51 Hun, 537, is substantially the same upon the facts, except with respect to the testimony affecting the good faith of the plaintiff in the purchase of the note. The note was procured from the maker by fraud and sold to plaintiff by on who had knowledge of such fraud, before maturity and for one half of its face value. The plaintiff's testimony is to the effect that he had no knowledge or information respecting the consideration of the note, or that there was any claim by the maker that the note was procured by fraud, or that any claim of de-

fense existed concerning it. The court held that the plaintiff established a case at the trial which entitled him to recover upon the note as a *bona fide* holder thereof for value. The law does not exact active vigilance with respect to facts extrinsic of the paper. It simply requires that he shall have no notice, actual or constructive, of the fraud, and he is not bound to institute inquiry unless he is advised of some fact, as distinguished from a mere surmise of a fact, tending to impair the character of the paper. Id.; Chapman *v.* Rose, *ante;* Welch *v.* Sage, *ante;* Seybel *v.* National Currency Bk., *ante.*

If a party pays full value for a note, in the usual course of business before maturity, that alone is *prima facie* proof of his good faith. Richmond *v.* Diefendorf, *ante;* Dalrymple *v.* Hillenbrand, *ante;* Cowing *v.* Altman, *ante.* But when he pays only half value, or substantially less than its face value, the transaction implies some defect, impeaches the responsibility or integrity of the maker, or the genuineness of the papers itself, and requires the holder to explain what occasions the large disparity between the nominal value and the actual price. Id. Huff *v.* Wagner, 63 Barb. 215, 235.

A holder of a negotiable note, where the maker shows that it was obtained from him by fraud or duress, is in no better position than the payee unless, within the law merchant, he is a *bona fide* holder, and he does not establish that character for himself by merely producing the note and proving that he paid one-half its face value for it. Vosburgh *v.* Diefendorf, 119 N. Y. 357.

*Antecedent debt.*—The transfer of a note as collateral security for the payment of a pre-existing debt, is not taking it in the ordinary course of trade, and for a valuable consideration, as between the creditor and an accommodation indorser. Wardell *v.* Howell, 9 Wend. 170. The term " by the usual course of trade " is meant, not that the holder shall receive the bills and notes thus obtained as securities for antecedent debts, but that he shall take them in his business, and as payment for a debt contracted at the time. Payne *v.* Cutler, 13 Id. 605.

A draft fraudulently diverted from the object for which it was made and accepted, can be enforced against the accommodation accepter only by a *bona fide* holder for value. Moore *v.* Ryder, 65 N. Y. 438. The difficulty in such cases is, to determine what is a parting with value within the meaning of the rule. A mere precedent debt does not make a party taking such a draft a holder for value, whether it is taken in payment of the debt or as collateral security therefor. Id. Coddington *v.* Bay, 20 John. 637; Wardell *v.* Howell, 9 Wend. 170; Payne *v.* Cutler, 13 Id. 605; Stalker *v.* McDonald, 6 Hill, 93; Farrington *v.* Frankfort Bk., 24 Barb. 255; Huff *v.* Wagner, *ante;* Lawrence *v.* Clark, 36 N. Y. 128; Pratt *v.* Coman, 37 Id. 440; Weaver *v.* Barden, 49 Id. 286.

Where negotiable paper is received as security, or even nominally as payment, for an antecedent debt due from the person who makes the unauthorized transfer, and the holder neither parts with value on the credit

of it, nor relinquishes any previous security, he will not be protected against the claim of the previous owner. Stalker *v.* McDonald, *ante.*

In Lawrence *v.* Clark, 36 N. Y. 128, it was held that a *bona fide* holder of negotiable paper is one who receives it before maturity, for value, and without notice of any existing equity against it; but that the receiving of a note on a precedent debt without surrendering or relinquishing any security or right in regard to it, will not constitute a person a *bona fide* holder, so as to shut out equities which might be insisted on against the prior owner.

It is the settled law of this state that prior equities of antecedent parties to negotiable paper transferred in fraud of their rights, will prevail against an endorsee who has received it merely in nominal payment of a precedent debt, where there is no evidence of an intention to receive the paper in absolute discharge and satisfaction beyond what may be inferred from the ordinary transaction of accepting or receipting it in payment or crediting it on account. Phœnix Ins. Co. *v.* Church, 59 How. 293; 81 N. Y. 218; Rosa *v.* Brotherson, 10 Wend. 85; Payne *v.* Cutler, *ante;* Stalker *v.* McDonald, *ante;* Lawrence *v.* Clark, *ante;* Weaver *v.* Barden, *ante;* Moore *v.* Ryder, 65 Id. 438; Potts *v.* Myers, 74 Id. 594.

The holder of a note negotiable on its face, who receives it in payment of a precedent debt or responsibility incurred, takes it subject to all equities existing between the original parties. Rosa *v.* Brotherson, *ante.* In the language of the commercial law, he has not paid value for it, and therefore is in no better situation than the payee. Id.

Where a plaintiff receives from the payee or holder a divested note in payment of a precedent debt and alters his position by surrendering some security or evidence of indebtedness, he becomes a *bona fide* holder for value of such note so as to preclude defenses which might otherwise be made to the note. Phenix Ins. Co. *v.* Church, 56 How. 493; Rev'd 81 N. Y. 218.

But in Turner *v.* Treadway, 56 How. 28, and in mem. in 53 N. Y. 650, the court held that a party who receives a note from the payee in payment of a precedent debt, without surrendering any security or evidence of indebtedness, and parts with no value, is not a *bona fide* holder for value, and the note in his hands is subject to all defenses, legal and equitable, which existed against it in the hands of the original payee.

So, in Bruce *v.* Kelly, 2 Abb. N. C. 81, it was held that the holder of commercial paper, who has received it for an antecedent debt, either as a security for payment, or as a nominal payment, without parting with any security, property, or other thing of legal value, or giving any new consideration, is not a holder for any valuable consideration.

In an action on a promissory note in Goodwin *v.* Conklin, 85 N. Y. 21, two other notes were executed for the accommodation of a party, which were diverted from the purpose for which they were executed, and were indorsed and transferred by the payee to another person in payment of an

antecedent debt, without the payment of any new consideration, and were by him transferred to plaintiff. In payment of the balance due on said notes, the note in suit, not containing the former payee's indorsement, was given, without notice to plaintiff or his transferee that the original notes were accommodation notes, and the latter notes were surrendered. It was held that the surrender of the said payee's indorsement, upon acceptance of the new note, made the plaintiff a *bona fide* holder for value, and excluded any defense existing as to the original notes.

So, in Nickerson *v.* Ruger, 84 N. Y. 675, the plaintiffs, in good faith and without notice of any equities, received from the payee, in exchange for two promissory notes which they surrendered absolutely and unconditionally, a note made by defendants; and it was held, in an action on the latter note, that the plaintiffs were *bona fide* holders for value, and that it was no defense that the note was executed for the accommodation of the payee and had been fraudulently diverted from the use intended.

But a bank, which receives on deposit just before its failure an accommodation check drawn upon another bank, and gives credit therefor on its books to the payees thereof, does not become, on refusal of the drawee to honor it, a *bona fide* holder of the check for value so that its assignee can recover upon it against the accommodation drawers. Platt *v.* Chapin, 49 How. 318.

In Potts *v.* Meyer, *ante,* a promissory note was delivered to a party to get discounted and return its proceeds to the makers, but, instead thereof, delivered the note to plaintiff, who credited the agent with the amount thereof upon his books, to apply on a precedent debt, and upon its protest charged it back to the agent; and it was held, in an action thereon by plaintiff against the makers, that he was not a *bona fide* holder for value as there was no express agreement to receive the note in payment.

Receiving a note for a precedent debt, when taken in satisfaction of the indebtedness, without recourse, and the debt is cancelled, is a receiving of it for value within the law merchant. Bank of St. Albans *v.* Gilliland, 23 Wend. 311. And where a note is discounted by a bank for the benefit of the holder, to extinguish his debt and the avails go to discharge his liability to the bank, such acts are equivalent to paying value at the time, and render the bank a holder for a valuable consideration. Bank of Sandusky *v.* Scoville, 24 Wend. 115.

In Burhman *v.* Baylis, 14 Hun, 608, an action was brought upon a promissory note given upon the purchase of a horse, and by the payee transferred in payment of an existing debt to plaintiff who was present, drew the note and knew that the sale was with warranty. The defendant said, at the time of the transfer to plaintiff, that it was all right. It was held that plaintiff was not a *bona fide* holder for value, and that defendant was entitled to set up the defense of the breach of warranty, and was not estopped by his statement from such defense, as plaintiff had parted with nothing of value in reliance upon it, and as he had knowledge of all the facts.

20

Note on Bona Fide Holders of Negotiable Paper.

The receiver of a promissory note as security for a precedent debt, is not a *bona fide* holder for value. Beers *v.* Culver, 1 Hill, 589; Scott *v.* Betts, Lalor, 363; American Ex. Bk. *v.* Corless, 46 Barb. 19; Prentiss *v.* Graves, 33 Id. 621; Stewart *v.* Small, 2 Barb. 559; Furness *v.* Gilchrist, 1 Sandf. 53.

Negotiable notes, executed under an agreement that the payee should furnish weekly a certain amount of the notes of a bank to the maker who was to take them up at maturity, were held in McSpedon *v.* Troy City Bank, 2 Keyes, 35, to be available in the hands of a party who has received them in good faith, as collateral security for a precedent debt, without liability to any equities between the original parties.

In Bank of St. Albans *v.* Gilliland, 23 Wend. 311, it was held that one who takes a note in satisfaction of a precedent debt, without recourse, and discharges the prior indebtedness, was a holder for value. See also Brown *v.* Leavitt, 31 N. Y. 113; Chrysler *v.* Griswold, 43 Id. 209; New York M. I. Works *v.* Smith, 4 Duer, 362; Gould *v.* Segee, 5 Id. 260; Purchase *v.* Mattison, 6 Id. 587; Robbins *v.* Richardson, 2 Bosw. 248; Mohawk Bk. *v.* Corey, 1 Hill, 513; Bank of Sandusky *v.* Scoville, 24 Wend. 115.

So, one who received a note on account of, and gave value for the residue of a precedent debt was held in Lewis *v.* Rogers, 2 J. & Sp. 64, to be a *bona fide* holder.

So, it has been held that one who receives a note improperly put in circulation, in payment of a pre-existing debt, without parting with any value, is entitled to the protection of a *bona fide* holder. Spear *v.* Myers, 6 Barb. 454; Chesbrough *v.* Wright, 41 Id. 28; Cardwell *v.* Hicks, 37 Id. 458; 23 How. 281; Philbrick *v.* Daleett, 2 J. & Sp. 370; 43 How. 419. But see Pratt *v.* Coman, 37 N. Y. 440; Brown *v.* Leavitt, 31 Id. 113; Lorimer *v.* Stevens, 3 A. L. J. 97.

One who receives the note of a third party for an antecedent debt, and pays the difference between his claim and the face of the note, was held in McAdam *v.* Cooke, 6 Daly, 101, to be a *bona fide* holder only to the extent of the sum paid.

It was held in Fisher *v.* Sharpe, 5 Daly, 214, that a party who receives a note for an antecedent debt, and gives up no security, nor any legal rights, nor grants any extension of time, is not a holder for value. See Bruce v. Kelly, 2 Abb. N. C. 81; Ayres *v.* Leypolt, 6 Daly, 91; Potts *v.* Mayer, 74 N. Y. 594; Buhrman *v.* Bayles, 14 Hun, 608; Turner *v.* Treadway, 56 How. 28; Opper *v.* Caillon, 9 Daly, 157.

*Forbearance.*—An agreement for forbearance is a sufficient consideration, Trader's Bank *v.* Bradner, 43 Barb. 379. In this case, a holder of drafts running to maturity, under an agreement not to sue any of the parties to them, until the maturity of another draft, transferred to him as collateral security, was held to become a *bona fide* holder of the latter.

Where a demand was made for payment of a call loan, and the debtor gave as additional security the notes of a third person, it was held in

Atlantic National Bank *v.* Franklin, 55 N. Y. 235, that the creditor was not a *bona fide* holder, inasmuch as there was no valid agreement for forbearance.

*No restriction.*—Where there is no limitation or restriction as to the manner in wich an accommodation note is to be used, the payee has a right to apply it to the payment or security of an antecedent debt, or to sustain his credit in any other way. Cole *v.* Saulpaugh, 48 Barb. 104; Grandin *v.* Le Roy, 2 Paige, 509; Bank of Rutland *v.* Buck, 5 Wend. 66; Lathrop *v.* Morris, 5 Sandf. 7; Mohawk Bank *v.* Corey, 1 Hill, 515.

A maker may use a note, endorsed, without restriction or limitation, for his accommodation, in any manner he thinks proper. Grandin *v.* Le Roy, 2 Paige, 509 ; Seneca County Bank *v.* Neass, 3 N. Y. 442; Schepp *v.* Carpenter, 51 Id. 602; Montress *v.* Clark, 2 Sandf. 115; Lathrop *v.* Morris, 5 Id. 7. So, it was held in Agawam Bank *v.* Strever, 18 N. Y. 502, that the payee may use a note made for his accommodation without restriction in any way be chooses, and that it is no defense that he pledged it as a continuing guarantee for future loans.

Where an accommodation note, not restricted to the mode of its use, has been transferred to pay or secure a precedent debt, the holder may recover, for the reason that the note has answered the purpose for which it was created, and the maker is to be considered as consenting to any use which operates to the benefit of the borrower. Schepp *v.* Carpenter, 49 Barb. 542. But the rule is different where the note has been obtained by fraud, or was given for a specific purpose, or is void in the hands of the payee on grounds of public policy or otherwise. Id. In such a case a precedent debt is not a consideration for a transfer of the note, which will entitle the holder to recover. Id. Corbitt v. Miller, 43 Barb. 309.

And in Merchants' Bank *v.* Comstock, 55 N. Y. 24, a party, who received a misappropriated accommodation note, before maturity, was held a holder in good faith, even though his indorser took it for a pre-existing debt.

In Mechanics' Bk. *v.* Livingston, 33 Barb. 458, an acceptance, in the absence of fraud was held to involve a consideration, inasmuch as it delays the holder's resort to the drawer, which he might have immediately, in case of non-acceptance, and for the same reason a subsequent acceptance before maturity, and for the accommodation of the drawer, has been held to inure to the benefit of the holder who discounted the draft before acceptance, in the expectation, justified by a previous course of dealings, that it would be so accepted. But an entirely different rule prevails, where the acceptance is not only without consideration in fact, but has been procured by means of a fraud practiced upon the acceptor. Philbrick *v.* Dallett, 12 Abb. N. S. 419. In such case the mere taking of a draft on account of an antecedent debt, without giving up or surrendering something of value on the faith of its acceptance, is not enough to constitute the holder a *bona fide* holder for value as against the acceptor. Id.

In Bright *v.* Judson, 47 Barb. 29, it was expressly decided that fraud-

ulent representations by which one is induced to accept a bill, are a bar to a recovery thereon by a holder who took it in payment of an antecedent debt, without surrendering something of value in reliance upon such acceptance.

In Farmers and Mechanics' Bk. v. Empire Stone Dressing Co., 5 Bosw. 289, it was held that to entitle one to enforce an acceptance, which is otherwise invalid, on the ground that he is a *bona fide* holder for value, it must appear that he parted with value upon the faith of such acceptance. It is only where a creditor receives a negotiable paper, fraudulently put in circulation or diverted from its purpose, in good faith and in actual satisfaction and discharge of a prior indebtedness, so that, unless such paper is available in his hands, he loses the demand, that it is considered as parting with value. Philbrick v. Dallett, *ante*, and the question whether a party is a holder for value, so as to postpone in his favor any right or equity of prior parties, depends upon the fact of actual extinguishment. Id.

An indorsee of a negotiable note made for the accommodation of the indorser, but without restriction as to its use. taking the note in good faith as collateral security for an antecedent debt, and without other consideration, is entitled to the position of a holder for value, and not affected by the defense of want of consideration to the maker. Grocers' Bank v. Penfield, 69 N. Y. 502. The existing debt in such case is a sufficient consideration for the transfer, and no new consideration need be shown. Id. It is only where the note has been diverted from the purpose for which it was intrusted to the payee, or some other equity exists in favor of the maker, that it is necessary that the holder should have parted with value on the faith of the note, in order to cut off such equity of the maker. Id. Cole v. Saulpaugh, *ante*; Bank of Rutland v Buck, *ante ;* Lathrop v. Morris, *ante.* And it is held in the United States Court that an antecedent debt is sufficient even in the case of a note fraudulently diverted to constitute the holder a *bona fide* holder for value without any extension of time, or surrender of securities or other new consideration. Swift v. Tyson, 16 Peters, ; Murray v. Lander, 2 Wall. 110. But this doctrine does not prevail in this state. Grocers' Bk. v. Penfield, *ante.* Stalker v. McDonald, 6 Hill, 93; McBride v. Farmers' Bk., 26 N. Y. 454.

The rule that where a promissory note is made for the accommodation of the payee, but without restriction as to its use, an indorsee taking it in good faith as collateral security for even an antecedent debt of the payee and indorser, occupies the position of a holder for value, and can recover thereon against the maker, was applied in Moyer v. Urtel, 27 W. Dig. 61. An accommodation promissory note was made, indorsed, and delivered to plaintiff as collateral security for his indorsement of the indorser's note, and as indemnity against all liability, etc. The latter note was reduced by payment and renewed for the balance a number of times with plaintiff's indorsement, and finally plaintiff paid and took up the renewal note, and brought an action upon the indemnity note, and the court applied the rule above stated.

Note on Bona Fide Holders of Negotiable Paper.

An indorsee of a promissory note, taking it as collateral security for an antecedent debt of the indorser, without other consideration, but in good faith and before maturity, occupies the position of, and is protected as, a holder for value. Continental Nat. Bk. *v.* Townshend, 87 N. Y. 8; Grocers' Bank *v.* Penfield, 69 Id. 502; Wallack *v.* Bader, 44 Hun, 623. The transfer of a note upon the last day of grace is before maturity, as the maker has the whole of that day within which to pay. Continental Nat. Bk. *v.* Townshead, *ante.* In Wallach *v.* Bader, *ante,* the payee of a note, for whose accommodation it was made, induced the plaintiffs to take up the note, and plaintiffs intrusted him with the mere clerical work of going to the bank, paying the money, and receiving and delivering the note to them. This was done on the last day before protest and before the usual time for protesting commercial paper on that day, and it was held that the transfer was made before maturity, that the plaintiffs were *bona fide* holders for value, and distinguished Lancey *v.* Clark, 64 N. Y. 209, where, from the fact that the accommodation payee, upon receiving the money from plaintiff with which to take up the note, placed it in bank to his individual credit, asked to have the note protested, and on the day the note fell due, and after protest, took it up with his individual check, it was held that the plaintiff did not take title from the bank but from the payee after maturity, and subject to any defense against it in the hands of the latter, and that the bank could not be made a seller without its knowledge or consent, and did not transfer the note but only took payment.

If a bill is accepted upon the faith of the drawer's indorsement, he is liable to a *bona fide* indorsee or holder for value, even though the bill proves a forgery. Nat. Park Bk. *v.* Ninth, Nat. Bk. 46 N. Y. 77; Bank of Commerce *v.* Union Bk., 3 Id. 230; see Coggill *v.* Amer. Ex. Bk., 1 Id. 113. And where a note is indorsed for the accommodation of the maker or payee, and is negotiated to a third person who pays value for it, the party receiving it, and who pays value, is entitled to recover upon it against such indorser notwithstanding he took it with full knowledge that is was accommodation paper. Ansen *v.* Abrahamson, N. Y. Com. Pl., April 7, 1890; Ross *v.* Bedell, 5 Duer, 462; Grant *v.* Ellicott, 7 Wend. 227; Commercial Bk. *v.* Norton, 1 Hill, 501. This is the case where there is no limitation of the indorser's liability upon the contract. Id. ; Fassin *v.* Hubbard, 55 N. Y. 465.

*Own note.*—It must be regarded as the settled doctrine in this state that the surrender by a creditor of a past due note of a debtor, upon receiving from him in good faith, before maturity, the note of a third person in place of the note surrendered, constitutes the creditor a holder for value of the note thus taken and protects him against the defenses and equities of the antecedent parties, whether the note surrendered was given to the creditor for goods sold or money loaned under circumstances which would leave the original debt represented by the note in existence enforceable against the debtor, or whether by surrendering the note the creditor parted with his

entire right of action. Phenix Ins. Co. *v.* Church, 59 How. 293; Bank of Salma *v.* Babcock, 21 Wend. 499; Essex Co. Bk. *v.* Russel, 29 N. Y. 673; Park Bank *v.* Watson, 42 Id. 490; Chrysler *v.* Renois, 43 Id. 209; Youngs *v.* Lee, 12 Id. 551; Day *v.* Saunders, 1 Abb. App. Dec. 495; Brown *v.* Leavitt, 31 N. Y. 113; Pratt *v.* Coman, 37 Id. 440; Paddon *v.* Taylor, 44 Id. 371; Clothier *v.* Adriance, 51 Id. 322; Mechanics' and Traders' Bk. *v.* Crow, 60 Id. 85; Bank of St. Albans *v.* Gilliland, 23 Wend. 311; Bank of Sandusky *v.* Scoville, 24 Id. 115.

But in Pratt *v.* Coman, *ante,* the surrender to a party of his own negotiable note past due, and the taking in lieu thereof a negotiable note before its maturity, were held to be a sufficient parting with value to constitute the party a *bona fide* holder of the latter note. The mere taking of collateral security on time is not per se, and in the absence of any agreement beyond it, an extension of time for the payment of the original debt. Cary *v.* White, 52 N. Y. 138; though an extension of time, by a valid agreement, for any period however short, is a valuable consideration. Id.

The holder of a promissory note delivered to him in payment of a note already due, is a holder for value. Brown *v.* Leavitt, *ante.* In Boyd *v.* Cummings, 17 N. Y. 101, a judgment debtor procured defendant to indorse a note for his accommodation upon his representation that he wanted to pay part of the money to plaintiff for barrels, and use the rest in his business, but delivered the note to plaintiff to hold as security for the judgment, upon an understanding that the supplementary proceedings pending should be discontinued, which was done, and the court held, in an action against the indorser, that plaintiff took the note *bona fide,* and for value, and that the discontinuance of the supplementary proceedings was ample consideration for the transfer of the note to him.

In Ayrault *v.* McQueen, 32 Barb. 305, a note indorsed by the defendant for the sole benefit and accommodation of the maker, to enable him to take up a previous note indorsed by the defendant, was diverted from this purpose, without the indorser's knowledge or consent, and transferred as security for a precedent debt to plaintiff who, upon its credit, surrendered a security held by him exceeding in value the amount of the note, it was held that this surrender constituted the plaintiff a *bona fide* holder of the note, for value, and that he was entitled to recover the amount of the indorser, notwithstanding the diversion.

In Setthermer *v.* Meyer, 33 Barb. 215, the court laid down the rule as well settled that whenever a negotiable note is taken in good faith, before it becomes due, in payment and satisfaction of a pre-existing indebtedness, and the evidence of such indebtedness, or a security therefor, is at the same time surrendered or destroyed, the person taking such note becomes a holder for a valuable consideration.

In Cardwell *v.* Hicks, 37 Barb. 458, one who purchases a promissory note, and pays for it partly in cash and partly by discharging a precedent debt of the vendor of the note, is held to be a *bona fide* holder to the

extent of the money paid by him, and that the fraudulent procuring of the note will constitute a valid defense to the note to the amount of pre-existing debt which was discharged.

Though a third person, who receives a note illegal, though not void, before it becomes due, for a valuable consideration and without notice of the illegal agreement, will be entitled to recover, merely receiving a note in part payment of a precedent debt, does not constitute a parting with value which will render the holder a *bona fide* holder for value. Chesborough *v.* Wright, 41 Barb. 28; aff'd 51 N. Y. 662.

In Bank of Salina *v.* Babcock, *ante*, it was held that where a bank receives and discounts negotiable papers, places the proceeds to the credit of the holder, and charges over against him and cancels other notes upon which are responsible parties, but which are over due and lie under protest, such cancellation is equivalent to parting with value in the strictest sense of the term, and precludes all defenses existing between the original parties.

In Essex Co. Bank *v.* Russell, *ante*, a promissory note was indorsed for the maker's accommodation, to retire a previous note of like amount made and indorsed by the same parties, but the bank refused to discount, or receive, it for the old one, and the maker then, without the knowledge of the indorsers, procured its discount at plaintiff's bank, and received therefor a note, which, though good and collectible, was past due and protested and the balance in cash ; and no part of the proceeds were applied to the purpose for which it was intended. It was held that notwithstanding the diversion of the note, the plaintiff was a *bona fide* holder and entitled to recover the full amount, inasmuch as it was not received under such circumstances as called upon the plaintiff to institute any inquiries as to the right of the maker or his agent to its possession, or to procure its discount.

In Park Bank *v.* Watson, *ante* a banker who, without notice, takes from his debtor accommodation paper, which has been fraudulently diverted from the purpose for which it was made, as collateral to a previous loan not yet due, and surrenders collateral notes of other parties then past due and protested for non payment, which had been previously deposited as collateral to said loan, was held to be a *bona fide* purchaser and entitled to recover against the accommodation maker, though the parties liable on the protested notes, for which this accommodation paper was substituted, were insolvent and the notes worthless.

In Chrysler *v.* Renois, *ante* the holder of a bill of exchange, who had received it in part payment of a debt evidenced by past due notes and secured by a mortgage, and at the time surrendered such notes, and received new notes for the difference in amount between the draft and the notes, was regarded a *bona fide* holder for value of said bill of exchange.

And the owner of a note, who, on receiving from the maker a new note indorsed by a third person, withdraws the former note from a bank where it had been deposited for collection, and surrenders it to the maker before

it is due, is a holder of the new note for value to the amount of the surrendered note, and entitled to recover this amount against the indorser, notwithstanding the delivery of the note was a diversion of it by the maker from the purpose for which it had been indorsed, in case he had no notice of the diversion. Youngs *v.* Lee, *ante.*

The rule that, where a party takes a negotiable paper before maturity, in payment of a note which is delivered up by him, the transaction constitutes him a holder for value, applies equally whether the note surrendered is not due or is over due. Day *v.* Saunders, *ante.*

In Clothier *v.* Adriance, *ante*, it was held that the surrender of a debtor's note is a sufficient parting with value to constitute the creditor a *bona fide* holder of the new note, though the liability of the original debtor remains.

In Mechanics' and Traders' Nat. Bk. v. Crow, *ante*, a bank discounted a note before maturity, on the application of the payee, and paid him a part of the proceeds in money, and applied the balance in payment of his note held by it, which was past due, and which the bank surrendered at the time of the payment, and it was held that this constituted the bank a holder for value, within the cases in this state.

Where a party is induced to make an exchange of notes on the credit and security of an acceptance of a third party, he becomes a *bona fide* holder of such acceptance to the amount of the note given on the faith thereof, whether the note so given is paid or not at maturity. Howlett *v.* Fitzgibbon, City Ct. N. Y., June, 1888.

Where a creditor surrenders an old note and takes a new note in its place, in consideration of a negotiable security put into his hands, he parts with value. Lombard *v.* Central Nat. Bk. of Troy, 52 Hun, 610. And if the negotiable security is put into his hands to induce him to promise to renew the old note, and he does subsequently so renew before notice of any defect of title to the security, the situation is the same. Id. The creditor, by this means, deprives himself of the valuable right of suing the debt at once, accepts a new for the old liability, and does this in consideration of the security which was delivered to him to induce this delay, and this constitutes a sufficient consideration, to protect him as a *bona fide* purchaser. Id. And it is immaterial whether the question presented is one of title or defense to the bond. Id.

One who received a note in payment of an old note was held in Bright *v.* Judson, 47 Barb. 29, not to become a *bona fide* holder, unless the old note was absolutely surrendered before maturity.

In Mickles *v.* Colvin, 4 Barb. 304, it was held that the purchaser of a promissory note of a third person, who gives his own note for the amount, is a *bona fide* holder.

Where a note was made for the accommodation of the payee and loaned to him, and he transfers before maturity to a creditor said note for a previous one, which was surrendered at the time to the payee, the surrender of the past due note furnishes a good consideration and gives the creditor

the position of a *bona fide* holder for value. Eckhert *v.* Ellis, 26 Hun, 663; Pratt *v.* Coman, *ante*; Phenix Ins. Co. *v.* Church, *ante*.

*From bona fide transferee.*—And, in the case of Eckhert *v.* Ellis, *ante*, it. was further held that, where, after such creditor becomes a *bona fide* holder for value, he transfers the note to plaintiff, the latter thereby succeeds to the title acquired by his transferrer, and is entitled to enforce such title whether the transfer to him was, or was not for value, and irrespective of the question whether it was transferred before or after due. See Chalmers *v.* Lanion, 1 Camp. 383; Commissioners *v.* Clark, 94 U. S. 285; Cromwell *v.* County of Sac, 95 U. S. 59; Schell *v.* Telford, 4 N. Y. Leg. Obs. 301; Corbitt *v.* Miller, 43 Barb. 309; Wheeler *v.* Allen, 59 How. 119.

A party can recover on a negotiable note obtained from the maker by fraud or duress, if he derived his title to the note from one who was a *bona fide* holder, even though he had notice himself of the fraudulent character of the paper. Vosburgh *v.* Diefendorf, 119 N. Y. 357; Cowing *v.* Altman, *ante*; Cromwell *v.* County of Sac, 96 U. S. 51; Commissioners *v.* Clark, 94 Id. 278; Eckbert *v.* Ellis, 26 Hun, 664.

Though plaintiff is not himself a *bona fide* holder, he can recover if he can prove that he succeeded to the rights of a *bona fide* holder. Vosburgh *v.* Diefendorf, 48 Hun, 619; Farmers and Citizens' Nat. Bk. *v.* Noxon, 45 N. Y. 762. But he cannot shield himself behind the good faith of an intermediary or innocent agent, who acted for him in the purchase of the note, and whom he interposed in order to protect himself. Vosburgh *v.* Diefendorf, *ante*.

There is one exception to this rule, which arises where the purchase is made by the original payee, as he is not entitled to the protection which the rules gives to the innocent indorsee or purchaser. Kost *v.* Bender, 25. Mich. 516; Sawyer *v.* Wiswell, 9 Allen, 42. The case of Chester *v.* Dorr, 41 N. Y. 279, is clearly distinguishable from the case of Eckhert *v.* Ellis, *ante*. The indorser in that case had indorsed the notes for the accommodation of the maker who held them at maturity and transferred them two or three years afterwards, and it was held that the holder could not recover against the accommodation indorser.

In Central Nat. Bk. *v.* Valentine, 18 Hun, 417, it was held that the mere. discounting of a note and giving a party credit on the books of the bank. for the amount thereof do not constitute the bank a holder for value.

*Extension of time.*—The acceptance of a time draft or note, which has. been fraudulently diverted, in payment of a past due debt, is not such a necessary extension of time of payment of the debt as to furnish a consideration and make the transferee a holder for value. Moore *v.* Ryder, 65 N. Y. 438. There must be a valid agreement, upon a good consideration, to extend the time of payment of the indebtedness, and the mere receipt. of the negotiable paper in payment of a precedent debt furnishes no consideration for such an agreement. Id. Nor does the mere promise of a. transferee of negotiable paper to pay to others a share of the demand paid by such paper, makes him a holder for value, for the reason that the promise

is not binding, and cannot, therefore, in a legal sense, subject him to loss. Id. Weaver *v.* Barden, *ante.* And a promise to pay a certain sum of money at some future time to the fraudulent negotiator of the paper does not make the transferee a holder for value within the meaning of the rule. Id.

A party who has loaned his note to another for the latter's accommodation, and, when it becomes due, receives the note of a third person for a portion and cash for the balance and thereupon pays his own note, is a holder for value of such note; and if it was used for the purpose for which the maker understood it was to be used, fraud in obtaining it from him can be no defense. Callahan *v.* Bancroft, 28 Hun, 584. It was held that by receiving the new note, the holder extended, by the time which it has to run the time for the payment of his debt, and that such extension is a valuable consideration for his transfer. Brown *v.* Leavitt, 31 N. Y. 113; Grocers' Bk. *v.* Penfield, 69 N. Y. 502.

*Part with value.*—The maker of a negotiable note may set up any defense against the holder which he might against the payee unless the holder has advanced money or property, or incurred liability upon the credit of the note. Payne *v.* Cutler, *ante.*

The valuable consideration necessary to protect an innocent holder, where negotiable paper has been obtained from the party executing it by means of fraud, must be either a new advance made at the time, or the parting with some prior security, or the actual discharge of an existing indebtedness. Farrington *v.* Frankfort Bank, *ante.* In this case the plaintiff was induced by the false and fraudulent representations of the drawer to indorse bills of exchange for his accommodation, and the bills were delivered to the cashier of a bank which then held protested drafts drawn by the same drawer upon the same drawees, without any agreement that the new drafts should be received in payment, but with the intention that they should be held as additional and collateral security to the protested bills; and though the bank passed the new drafts to the credit of the drawer, and charged him with the protested bills, and stamped the latter with its cancelling iron, without surrendering their possession, it was held that the bank, as against the indorser, was not entitled to protection as a *bona fide* holder for a valuable consideration and without notice.

To constitute the transferrer of a negotiable instrument a purchaser for value, so as to protect him against defenses available against his transferrer, he must pay something in money or property, or some subsisting debt must be satisfied or suspended or new responsibility incurred; and the mere transfer of the paper as collateral security for an antecedent debt or liability does not, *per se*, place the transferee on the superior footing of a holder for value. Mayer *v.* Heidelbach, 56 Super. Ct. 595. In this case, the plaintiffs deposited money with a certain private banking firm and drew a check for a less amount on said firm in favor of said bankers to pay for certain notes of exchange issued by defendants which the bankers then

sold and delivered to plaintiffs, and on the same day the bankers failed, without having paid the defendants for the said notes of exchange ; but it was held that the plaintiffs were *bona fide* purchasers for value, and took the notes of exchange freed from all equities existing between the defendants and the bankers, and could recover in an action upon said notes against the defendants.

An indorsee of negotiable paper, in order to constitute himself a holder for value so as to exclude the equities of antecedent parties, must relinquish some right, incur some responsibility, or part with value, upon the credit of the paper at the time of the transfer. Phenix Ins. Co. *v.* Church *ante.* In this case, it was held that if the indorsee, at the time of receiving a diverted note, surrenders a past due check held by him and made by the person delivering such diverted note, he does not become a *bona fide* holder for value and is not entitled to recover. The rule that the surrender of a past due note of the debtor constitutes the creditor a *bona fide* holder for value is technical rather than substantial, and is not to be extended to the surrender of a bank check under similar circumstances.

Where a note has been diverted from its original destination, and fraudulently put in circulation by the maker or his agent, the holder cannot recover upon it against an accommodation indorser, without showing that he received it in good faith, in the ordinary course of trade, and paid for it a valuable consideration. Wardell *v.* Howell, 9 Wend. 170. In this case, it was held that a note, indorsed for the accommodation of the maker delivered to him to be used in renewal of a former note about to fall due at a bank, and transferred by the maker as collateral security for the payment of another debt owing by him, cannot be enforced against the indorser by the creditor, to whom such transfer is made.

If a party becomes a *bona fide* holder for value of a bill before its acceptance, it is not essential to his right to enforce it against a subsequent acceptor, that an additional consideration should proceed from him to the drawee. Henertematte *v.* Morris, 10 N. Y. 63. The rule that it is not competent for an acceptor to allege as a defense to an action on a bill that it was done without consideration, or for accommodation, as against a *bona fide* holder for value of such paper, flows logically from the conclusive force given to his admission of funds, and is elementary. Id. Harger *v.* Worral, 69 N. Y. 371 Com. Bk. *v.* Norton, 1 Hill, 501.

Where a bank receives bonds from a broker, which he is not, in fact, authorized to use in this manner, in the usual course of business, and for value, afterwards advanced upon their faith and security, it is such a parting with value for them as to entitle the bank so far to be protected as a *bona fide* holder. Thompson *v.* St. Nicholas Nat., Bk., 47 Hun, 621. And the owner, to recover them from the broker, must show that the debt for which they were pledged had been wholly paid, or the tender of a sufficient sum to discharge such debt. Thompson *v.* St. Nicholas Nat. Bk., 113 N. Y. 325; Lewis *v.* Mott, 36 Id. 395; Bakeman *v.* Pooler, 15 Wend. 637.

In Greeff *v.* Dieckerhoff, N. Y. Com. Pl., February 4, 1889, a banker borrowed of the defendants a sum of money, and at the time agreed to send them collaterals. He sometime afterwards sent them certain bonds to hold as collateral security for the loan. These bonds belonged to plaintiff but at the time of the loan were held by the banker as collateral for the balance of a loan formerly made by him to plaintiff. The plaintiff knew at the time he delivered the bonds to the banker that the latter would hypothecate them for loans to himself if necessary. It was held that the defendants were *bona fide* holders of the securities for value, and that the mere lapse of time, under the circumstances, between the date of loan and delivery of securities would *not convert the loans into debts without* security, so that the subsequent giving of the bonds would be the giving of the securities for an antecedent debt. And it was further held in this case that, where a loan was made on the promise of the borrower that he would give collaterals to secure it, which he afterwards does, the lenders are in the same position that they would have been if the securities had been given at the time the money was loaned, and the subsequent substitution of another security would not change the transaction, nor impair the nature of the loan or its security.

A bank, receiving from another notes for collection, is not a purchaser for value, by reason of its having a balance against the remitting bank, for which it had refrained from drawing, and from having discounted notes for the latter upon its indorsement, in reliance upon a course of dealings between the banks to collect notes for each other, as in neither case has it ever parted with anything or given any credit, or relinquished any security, or assumed any burden or responsibility on the faith of the notes, and the bank, in commercial language, is not a *bona fide* holder of the notes, or of the money received thereon, for value. McBride *v.* Farmers' Bk., 26 N. Y. 450.

In Aitken *v.* Meyer, 67 Barb. 131, the plaintiff having in his possession certain papers upon which he claimed a lien for money loaned to third parties for defendant, received from them defendants' check in discharge of the debt and delivered up the papers. The defendant knew, when he delivered his check to these parties, that it was to be used by them. It was held that these facts constituted the plaintiff a *bona fide* holder of the check.

In Ward *v.* Howard, 88 N. Y. 74, plaintiff's intestate executed for the accommodation of another party a note payable to his order, who indorsed and negotiated it and received the proceeds ; and the indorser not being able to meet this note paid to plaintiff's intestate a sum of money, and transferred to him a note for $1000 made and indorsed by defendants not then due, with which the accommodation note was paid, taken up and cancelled. Before the transfer of the $1000 note, the transferrer had received $420 to apply on it, but plaintiff's intestate had no knowledge or notice of such payment when he received the note; it was held that he was a *bona.*

*fide* purchaser for value without notice, and that the payment was no defense.

In Bank of N. Y. *v.* Vanderhorst, 32 N. Y. 553, the court held that an indorsee of a negotiable promissory note, who receives it in the usual course of business, without notice that it was made for a special purpose and applied to uses different from those for which it was intended by the original parties, and who is without knowledge or notice of the equities between the parties, is regarded as a holder in good faith; and, if he receives it, at the time of the loan, as collateral security for the repayment of a loan of money upon another note, is a holder for value.

Where an agent has received notes to be remitted to his principal, and passes them to the defendant as security against liabilities assumed by him, as indorser of the agent's notes, and as maker of notes lent to said agent for his accommodation, but not then payable, and the defendant has no notice or knowledge that the notes belonged to the principal, but believed that they belonged to the agent, who had become insolvent at the time of pledging them, it was held that, as the notes were not received in the usual course of trade, nor for a present consideration, the defendant was not entitled to hold them as against the true owner. Coddington *v.* Bay, *ante*.

A person who receives a note from a stranger, who, after a note becomes due, calls upon the holder, pays the amount due upon it declines having it cancelled and takes it away with him, without saying anything about having it, is not entitled to be regarded as a *bona fide* holder of the note, in such a sense as to exclude the equities between the maker and the person paying the note. Burr *v.* Smith, 21 Barb. 262.

A bank, which receives a promissory note under an arrangement to make advances thereon, was held in Clots *v.* Bently, 5 Abb. L. J. 286, to be a holder in good faith, to the extent of such advances.

A party who, before he parted with value on the credit of a note, received notice from the indorser that it had been fraudulently diverted from its intended purposes, was held in Crandall *v.* Vickery, 45 Barb. 156, not to be a *bona fide* holder as against such indorser.

And in Lally *v.* Colgate, 10 J. & Sp. 544, it was held that one, who receives, through a broker, a check drawn to the latter's order, without any personal dealings with the drawer, and gives value therefor, is a *bona fide* holder.

The receiver of a promissory note as collateral security for a present loan of credit, was held in Nelson *v.* Edwards, 40 Barb. '279, to be a *bona fide* holder for value. And so one who advances money for a joint enterprise and takes the promissory notes of third persons as security, is a *bona fide* holder thereof. Gorden *v.* Boppe, 55 N. Y. 665.

And in Mason *v.* Hickox, 11 Abb. N. S. 127, a principal was held to be a *bona fide* holder for value, where he receives from his agent a note for more

Note on Bona Fide Holders of Negotiable Paper.

than the balance due, upon the understanding that the agent is to retain the excess from subsequent collections.

*Collateral.*—And in Boyd *v.* Cummings, 17 N. Y. 101, it was held that where one receives a negotiable note, in the usual course of business, without notice that it was made for a specific purpose, or of any equities between the parties, he is a *bona fide* holder for value, though it is taken as collateral security. See Bank of the State of N. Y. *v.* Vanderhorst, 32 Id. 553; Essex County Bank *v.* Russell, 29 Id. 673; Bank of Angelica *v.* Hall, 44 Id. 395 ; Stettheimer *v.* Meyer, 33 Barb. 215; Hoyt *v.* Hoyt, 8 Bosw. 511.

And one who received a promissory note as collateral security was held in Brookman *v.* Metcalf, 32 N. Y. 591, to be a *bona fide* holder for value. See State Bank of Ohio *v.* Hoge, 35 Id. 65; Platt *v.* Beebe, 57 Id. 339.

And so, in Park Bank *v.* Watson, 42 N. Y. 490, it was held that a person, who receives a note as collateral security for a prior loan, not yet due, and thereupon surrenders other securities, is a holder in good faith, without regard to the value of the surrendered securities. See Huff *v.* Wagner, 63 Barb. 215; Harger *v.* Wilson, Id. 237; White *v.* Springfield Bank, 3 Bandf. 222.

So, it was held in Williams *v.* Smith, 2 Hill, 301, that a party who receives a promissory note as collateral security for indorsements, thereafter to be made, is a *bona fide* holder to the extent of his liability.

*Defective paper.*—The rule that a party buying commercial paper which remains on some essential particular incomplete and imperfect does not acquire the character of a *bona fide* holder, rests upon sound reasons and is well established in commercial law. Davis Sewing M. Co., *v.* Best, 105 N. Y. 59. The fact that it had not been fully and completely prepared, to perform the office for which it was designed, is as strong evidence as can be afforded that such paper had been prematurely put in circulation contrary to the will and intention of the maker. Id. In this case the plaintiff authorized its treasurer to issue a specified amount of bonds, have them signed and deliver them to its president to negotiate. The treasurer issued them, obtained all the signatures necessary but that of the president and handed them to him, and he. without signing them, hypothecated them to a trust company as security for a loan by said company to a bank. In an action against the defendant as receiver of the trust company to recover their possession, it was held that plaintiff was entitled to recover on the ground that defendant was not a *bona fide* holder, in as much as the notes were not executed in a form authorized by plaintiff, which defect appeared on the face of the paper.

In Stoney *v.* American Life Ins. Co., 11 Paige, 635, it was held that a negotiable security of a corporation, which upon its fact appears to have been duly issued by such corporation, and in conformity with its charter, is valid in the hands of a *bona fide* holder thereof, without notice, though such security was in fact issued for a purpose and at a place not authorized by the charter of the corporation, and in violation of the laws of the state,

where it was actually issued. See Safford *v.* Wyckoff, 4 Hill, 442; Genesee Bk. *v.* Patchen Bk. 13 N. Y. 309. In Farmers and Mechanics' Bk. *v.* Butchers and Drovers' Bk. 16 Id. 125, the court held that a *bona fide* holder, for value, of a check, negotiable upon its face and certified to be good by the paying teller of a bank, on which it is drawn, whose authority to certify is limited to cases where the bank has funds of the drawer in hand sufficient to cover the check, can enforce its payment, though the drawer has no funds, and the check was certified by the teller in violation of his duty, for the mere accommodation of the drawer, and upon his promise that it should never be presented for payment.

But in Ledwich *v.* McKim, 53 N. Y. 307, where the bonds of a railroad corporation, conditioned for the payment of either of two specified kinds, and amounts of national currency, to be determined by the place to be fixed for their payment, which bonds contained a clause authorizing the president of the corporation to fix by his indersoment such place of payment and which had been indorsed in blank by the president, but while in the possession of the corporation were stolen, it was held that a *bona fide* holder was not authorized to fill the blank, and that he acquired and could convey no title to the bonds. The rule that the *bona fide* holder of an incomplete instrument, negotiable but for some lack capable of being supplied, has an implied authority to supply for omission, and to hold the maker thereon, only applies where the latter has by his own act, or the act of another authorized, confided in or invested, with apparent authority by him, put the instrument in circulation as negotiable paper.

Where a party is induced to sign a negotiable instrument by reason of fraud, artifice or deception practiced upom him by another, as to the nature of the instrument, and the maker signs the same innocently and under the belief that it is a contract of a different character, then there can be no recovery upon the bill or note, though the holder may be an innocent purchaser for value before maturity, unless the maker was guilty of laches, or carelessness in omitting to read the same, or by some other means ascertaining the true nature and import of the instrument. Nat. Ex. Bk. *v.* Veneman, 43 Hun, 241. But if the maker is guilty of laches or negligence in this respect, he will be liable to a *bona fide* holder for value, who purchased the note for maturity. Id.; Chapman v. Rose, *ante.* In the former case, the maker of the note and his wife who was present on the occasion, were both unable to read the English language and ascertain the contents of the paper, and it was held that it was a question for the jury to say whether the maker had exeused himself in placing the confidence which he did in the other party to the transaction as to the contents of the instruments.

In Nat. Ex. Bk. *v.* Ogden, 31 Hun 452, the court held that the maker of the note was guilty of negligence in omitting to consult the members of his own family, who could read and were present at the time of its execution.

In case the holder is a *bona fide* purchaser for value before maturity, the burden of proof is cast upon the maker to show that he has been induced to sign the note by false and deceptive representations, and that he is free from laches or negligence on his part. Nat. Ex. Bk. *v.* Veneman, *ante.*

*Unauthorized or voidable paper.* In Chapman *v.* Rose, 56 N. Y. 137, it was held that where one, who has the opportunity and power to ascertain with certainty the exact obligation he is assuming, chooses to rely upon the statements of the person with whom he is dealing, and executes a negotiable promissory note without reading or examination, he is, as against a *bona fide* holder for value, bound by his act, and is estopped from claiming that he intended to sign an entirely different obligation, and that the statements upon which he relied were false. The opinion goes upon the ground that there does not appear to have been any physical obstacle to the defendant's reading the paper before he signed it. Mosher *v.* Carpenter, 13 Hun, 602. And in Whitney *v.* Snyder, 2 Lansing, 477, the defendant was unable to read, and this presented the physical obstacle which would, under some circumstances, excuse a party whose signature has been obtained without his knowledge to a negotiable instrument.

An agent, who purchases of his principal for value, before maturity, a promissory note given for a mowing machine, without knowledge of a warranty or its breach, or of any facts or circumstances which make it his duty to inquire in that regard, though the note was taken by another agent on a sale to the maker of the note, takes it freed from all equities existing between his principal and the maker, and evidence as to such warranty and its breach is inadmissible. Whitely *v.* Zea, 19 W. Dig. 98.

A purchaser for value, and without notice, before maturity, of a promissory note drawn in the ordinary form, and not referring to collateral, is not bound to inquire or ascertain whether there was, or was not, collateral accompanying it, and is a *bona fide* holder of such note. Islay *v.* Smedes, City Ct. N. Y., October 21, 1889.

And where a bank, without knowledge that it was an accommodation note, or that it was indorsed without authority, discounted a note indorsed by defendant's husband as her agent, who conducted her business, and had full authority to make and indorse notes for her in such business, and had so indorsed notes for the same maker, the appearance of the note is not an actual or constructive notice to the bank of any defect in the note so as to deprive it of the character of a *bona fide* holder. Bank of Commerce *v.* Cohen, 54 Hun, 635.

In Tradesmen's Nat. Bk. *v.* Ertell, 56 Hun, 641; the court held that in an action on a promissory note by a bank which discounted it before maturity, proof that the note was negotiated in violation of an agreement to hold it as collateral security does not change the burden of proof, but the defendant is bound to show, in order to interpose his defense, that the bank is not a *bona fide* holder for value. The presumption is that the bank is a *bona fide* holder for value. Id. In Mechanics and Traders'

Bk. *v.* Crow, *ante*, it is expressly held that under such circumstances it is necessary for the party seeking to avoid the note to go further; that the bank is presumed to be the holder for value without notice of any defense to the instrument; and that proof of failure of considerations between the original parties does not change the presumption or put the bank to the proof of the consideration upon which it received the paper. The case of the Phenix Bk. *v.* Church, 81 N. Y. 218, does not conflict with this view, as the decision was placed upon the fact that all the holder of the note had given for it was a check of the party from whom he obtained the note; that it was simply receiving nominal payment of a precedent debt, and that the holder was not a holder for value.

Where notes are issued and delivered to the president pursuant to a resolution of the board of directors of a railway company, for the purpose of paying him a salary for his services, and are negotiated by him to plaintiff, the latter is entitled to the protection of a *bona fide* holder without notice. Wilson *v.* Metropolitan R. Co., 120 N. Y. 145. One dealing with a railway corporation, which has a right to pay, and ordinarily does pay, its president a salary, is not bound to go behind such an assertion as was was made by the directors, for the purpose of ascertaining whether the salary is legally payable. Id.; F. and M. Bk. *v.* B. and D. Bk., *ante;* North River Bk. *v.* Aymer, 3 Hill, 262; Exchange Bk. *v.* Monteath, 26 N. Y. 505.

Where a corporation has a general power to bind itself by promissory notes and contracts of indorsement, a party who is a holder of its notes for value and without notice that they were indorsed for the accommodation of the makers, and not in the usual course of business, is entitled to recover. Nat. Park Bk. *v.* German-American, etc., Co., 116 N. Y. 281. But the fact that the maker of a promissory note procures it to be discounted for his own benefit, is, if unexplained, notice to the discounter that the indorsement is not in the usual course of business, but is for the accommodation of the maker. Id.; Stall *v.* Catskill Bk., 18 Wend. 466; Fielden *v.* Lahens, 9 Bosw. 436; 3 Trans. App. 218; 2 Abb. App. Dec, 111; 6 Abb. N. S. 341; Bank of Vergennes *v.* Cameron, 7 Barb. 143.

In Fairbanks *v.* Winthrop, 39 Hun, 588, a part owner of negotiable instruments transferred them in payment of a debt to a creditor, who, upon receiving the bonds, and in consideration thereof, executed and delivered to such part owner, a release under seal for all claims, debts, dues and demands he had against him, and also discharged another claim which had been assigned to him by way of security, and it was held that the creditor was entitled to the protection, against the claim of the other part owner, afforded to *bona fide* purchasers in good faith, in case he received the bonds without notice of such co-owner's interest therein.

A party discounting notes made in the name of the firm and crediting the proceeds to the individual account of the partner presenting them for

discount, is not a *bona fide* holder of the notes as against the other partner, in case the latter had no actual notice or knowledge of the making, indorsement or negotiation of said notes, or any part of the proceeds ever came to his use or benefit, though the holder had no notice or knowledge of the fact that such copartner was ignorant of the existence of said series of notes. Spaulding *v.* Kelly, 43 Hun, 301. In this case it was held that the holder was bound to know that the partner had no right to use the partnership to create or increase his individual credit or account without the consent of his partner, and was chargeable with notice that the notes were wrongfully made and issued, and that the transaction was neither apparently or really within the scope of the partnership business. See also Union Nat. Bk. *v.* Underhill, 102 N. Y. 336. In the latter case, it is said that, in such a case, the third person has notice that the transaction is outside of the partnership business and he cannot rely upon the partnership credit. Wilson *v.* Williams, 14 Wend. 146; Thorn *v.* Smith, 21 Id. 365; Kenneys *v.* Richards, 11 Barb. 312; Elliott *v.* Dudley, 19 Id. 326; Farmers and Mechanics' Bk. *v.* Butchers and Drovers' Bk., *ante.*

When a promissory note given to, and payable to the order of, an insurance company is transferred to its president without any previous authority of the board of directors, as required by the statute relative to moneyed corporations, and transferred by the president to the plaintiff, such note is *prima facie* void in the hands of an assignee or holder; and in order to sustain an action upon it against the makers, he must show that he purchased it for a valuable consideration and without notice of the facts which the statute declares render the transfer illegal and void. Houghton *v.* McAuliffe, 26 How. 270.

A director of a bank is chargeable with notice that an unauthorized transfer of promissory notes made to him by the banks is illegal, and he is not a *bona fide* holder for value. Gillet *v.* Phillips, 13 N. Y. 114.

In Pool *v.* Watson, 50 N. Y. Super. 53, which was an action upon a promissory note by the indorsee against the maker, it was held error to direct a verdict for the plaintiff, where he offered no evidence that he was a *bona fide* holder, and upon the evidence it was a question for the jury whether the note had not been placed in the custody of the payee by the maker for a specific purpose.

The omission to write across the face of a patent note the words "given for a patent right," does not impair the validity of the note, or take from a *bona fide* holder for value before maturity any of the rights secured to him by the law merchant. Vosburgh *v.* Diefendorf, *ante;* Herdic *v.* Roessler, 109 N. Y. 127.

The statute of another state providing for the insertion of the words "given for a patent right" in every note given in consideration for the sale of a patent right, and that such note shall be subject, in the hands of any purchaser or holder, to the same defenses as in the hands of the original owner or holder, does not affect the validity of such note when

purchased in this state before maturity and in good faith; and, where such purchaser does not know of the existence of the said statute, his right of recovery upon the note is not affected by the fact that he knew that it was given upon the sale of a patent right. Palmer v. Minar, 8 Hun, 342.

A security tainted with usury in its creation is void, even in the hands of a *bona fide* holder. Kilner v. O'Brien, 14 Hun, 414; Thompson v. Berry, 3 Johns, Ch. 395; aff'd 17 John. 436. Any new security given to the lender in exchange for such usurious security, or into which the latter enters as a consideration, is also infected with the usury, and is void. Id.; Jack v. Nichols, 5 N. Y. 178; McCraney v. Alden, 46 Barb. 272; Cope v. Wheeler, 41 N. Y. 303; and even though the new security is given by a third person, who is a stranger to the loan, if it is without any new consideration. Id.; Tuthill v. Davis, 20 John. 285; Vickery v. Dickson, 35 Barb. 96. But if the usurious obligation is transferred to an innocent holder, and he receives a new one in its stead directly from the debtor, such new obligation cannot be impeached for the usury in the original instrument. Id.; Jackson v. Henry, 10 John. 185; Powell v. Waters, 8 Cow. 669, 691, 696; Kent v. Walton, 7 Wend. 256; Holmes v. Williams, 10 Paige, 326; Aldrich v. Reynolds, 1 Barb. Ch. 43; Smedberg v. Simpson, 2 Sandf. 85; Sherwood v. Archer, 10 Hun, 73.

So it was held in Johnson v. Morley, Lalor, 29, that one who discounts a note fraudulent in its inception, upon an usurious consideration, is not a *bona fide* holder.

But in Miller v. Crayton, 3 N. Y. S. C. 360, a purchaser of a note, though at a usurious rate of discount, was held to be a holder in good faith. See Williams v. Tilt, 36 N. Y. 319.

A note made payable to a third person, given, upon the maturity of an usurious note, for the purpose of an extension, by the borrower to the usurer, and by him transferred to such third party, is tainted with usury in the latter's hands, though he received the same in good faith and without knowledge of such usury. Treadwell v. Archer, 76 N. Y. 196. It was intimated in this case, that, if the note had been taken, under the same circumstances of innocence, directly from the maker by the payee, in pursuance of an agreement to take it in discharge of a debt due to him from the lender, he could recover on the note.

In Hall v. Wilson, 16 Barb. 548, it was held that a third person cannot recover on a note, payable to bearer, which was stolen, before delivery, and discounted for the thief at an usurious rate of interest, on the ground that he took it in good faith, for a valuable consideration, and in the usual course of his business.

Though notes given on gambling transactions are declared void by statute, yet, if they are transferred to an innocent holder, and while in his hands the note is renewed, the taint of illegality is removed, and the innocent holder may recover on the renewed note, though he could not have recovered on the original note. Seventh Ward Nat. Bk. v. Newbold, 2 City Ct. 125.

*Dishonored note.*—In Marine Bank v. Clements, 31 N. Y. 33, it was held

that the mere fact that a note was discounted but three days before maturity is not enough to deprive a bank of the protection afforded to a *bona fide* holder.

A note for the payment of a sum of money, with annual interest, is, if a year's interest remains unpaid, dishonored in the hands of the holder, and a subsequent receiver, while in such condition, was held in Newell v. Gregg, 51 Barb. 263, not to be a *bona fide* holder.

*Pledge.*—It was held in Russell v. Scudder, 42 Barb. 31, that a verbal pledge of a negotiable note, without a manual delivery, or an absolute transfer, did not render the pledgee a holder in good faith.

*Transfer without indorsement.*—The purchaser of a draft or check, who obtains title without an indorsement by the payee, holds it subject to all equities and defenses existing between the original parties, even though he has paid full consideration, without notice of the existence of such equities and defenses. Goshen Nat. Bk. *v.* Bingham, 118 N. Y. 349; Harrop v. Fisher, 30 L. J. C. P. N. S. 283; Whistler *v.* Forster, 14 C. B. N. S. 248; Savage *v.* King, 17 Maine, 301; Clark *v.* Callison, 7 Bradwell, 263; Haskell *v.* Mitchell, 53 Maine, 468; Clark *v.* Whitaker, 50 N. H. 474 ; Calder *v.* Billington, 15 Maine, 398; Lancaster Nat. Bk. *v.* Taylor, 100 Mass. 18; Gilbert *v.* Sharp. 2 Lans. 412; Hedges *v.* Sealy, 9 Barb. 214-218 ; Frankin Bk. *v.* Raymond, 3 Wend. 69; Raynor *v.* Hoagland, 39 Super. 11; Muller *v.* Pondis, 55 N. Y. 325; Freund *v.* Imp. and Traders' Nat. Bk. 76 Id. 352 ; Trust Co. *v.* Nat. Bk. 101, U. S. 68; Osgood's Adm'rs *v.* Artt, 17 Fed. Rep. 575. The rule that a draft or check, if transferred by indorsement, for value, in good faith, and before maturity, is available in the hands of the holder, notwithstanding the existence of equities and defenses which would render it unavailable in the hands of a prior holder, is only applicable to instruments which are negotiable according to the law merchant. Id. A transfer, without indorsement is simply an assignment, and destroys the instrument's negotiability. Id.

*How far protected.*—Where a note is procured from the maker through fraud, a holder in good faith for part value is entitled to recover only the amount paid by him for the note. Richmond *v.* Diefendorf, 51 Hun, 537.

The decisions in Cole v. Saulpaugh, 48 Barb. 104, and Schepp v. Carpenter, 49, Id. 542, are based upon the fact that the payee, not being limited or restricted as to the manner of the use of the note, had a right to apply it to the payment or security of an antecedent debt, or to sustain his credit with it in any other way.

A *bona fide* holder of commercial paper to which, as between maker and payee, there is a good defense, is entitled to be protected only to the extent of the value which he has paid. Huff *v.* Wagner, 63 Barb. 215. And if he has paid only a part of the consideration or value of the property, he is entitled to be considered a *bona fide* purchaser *pro tanto* only. Id. And there is no distinction between the case where the note is transferred for money and the case where it is transferred in exchange for property. Id.

In Williams *v.* Smith, 2 Hill, 301, it was held that a party to whom a promissory note has been transferred before due as collateral security for indorsements to be made by him which are afterwards made, and who takes it without notice of a defense existing against it in the hands of his transferee, is entitled to be treated as a *bona fide* holder, but cannot recover beyond what is due on the indorsements against which it was designed to secure him.